[Civil No. 1980. Filed October 11, 1921.]

[201 Pac. 87.]

W. P. CLEMENTS, L. P. MATTHEWS, J. F. BROWN, S. J. NORMAN, GEO. W. BURGESS, F. J. GOODRICH, C. R. PIERCE, F. E. FREEMAN, ED. HEALEY, CRANE CLEMENTS, W. R. PRICE, J. WARREN DAVIDSON, J. G. KEATING, O. J. BAUGHN, M. G. CLEMANS, W. J. DAVIDSON, all of Pinal County, Arizona; RAY B. CREBS, POWELL COSBY, WILLIAM GREGG, GEORGE EBSEN, F. T. WORLEY, L. O. WRIGHT, A. G. SMITH, T. N. CARTER, Jr., and L. E. MATTESON, all of Cochise County, Arizona; THOS. D. MOLLOY, of Yuma County, Arizona; J. R. DEAL, WILBUR TREADWELL, JAS. A. SHEA, L. E. THOMAS, W. H. O'BARR, J. O. PINNICK, FRED A. DIBBLE, all of Maricopa County, Arizona; FRED W. FICKETT, H. E. FARR, J. H. McCLURE and C. H. ODOM, all of Pima County, Arizona; JOHN HENNESSY and WILLIAM BABBITT, of Coconino County, Arizona; C. T. COOLEY, of Navajo County, Arizona, and JOHN H. CANFIELD, of Apache County, Arizona, Plaintiffs, v. ERNEST R. HALL, as Secretary of State of the State of Arizona, Defendant.

1. CONSTITUTIONAL LAW—PROPOSED AMENDMENT TO WHICH LEGISLATIVE MEASURE IS APPENDED MUST BE SUBMITTED TO GOVERNOR.—If there is appended to a proposed amendment by the legislature any measure essentially legislative or statutory in character, it must be submitted to the Governor for his approval before it can become a law.

2. CONSTITUTIONAL LAW — PROCEDURE OF SPECIAL ELECTIONS CALLED FOR SUBMISSION OF PROPOSED CONSTITUTIONAL AMENDMENTS GOV-

---

1. Necessity of approval by governor of proposed amendment to the state Constitution, note, 4 Ann. Cas. 703.

ERNED BY CIVIL CODE, AND NOT BY CONSTITUTION.—The procedure of special elections called for submission of proposed amendments to the Constitution is governed by Civil Code of 1913, paragraphs 3323–3339, and not Constitution, article 4, section 1, subdivision 11, the purpose of such constitutional provision having been to supply a guide as to procedure for submission of measures and proposed amendments during the interim between the adoption of the Constitution and the time when the legislature should meet and pass laws especially providing the machinery for holding elections on measures and proposed amendments.

3. CONSTITUTIONAL LAW—ACT PROVIDING FOR SUBMISSION OF CONSTITUTIONAL AMENDMENT AT SPECIAL ELECTION TO BE HELD UNDER GENERAL ELECTION LAWS HELD "LEGISLATION" SUBJECT TO REFERENDUM. Laws of 1921, chapter 85, section 4, enacted under Constitution, article 21, section 1, providing for submission of amendment to Constitution, article 9, section 5, at a special election to be held on specified date "in manner provided by law for general elections," *held* legislation, in view of its adoption, by reference, to the general election laws, and therefore subject to the referendum under Constitution, article 4, section 1, subdivisions 1, 2.

4. CONSTITUTIONAL LAW—PROPOSED AMENDMENT SUBMITTED AT NEXT GENERAL ELECTION WHERE SUBMISSION ON DATE SPECIFIED FOR SPECIAL ELECTION IS IMPOSSIBLE BY REASON OF REFERENDUM.— Amendment to Constitution, article 9, section 5, proposed by Laws of 1921, chapter 85, will not be submitted to a special election on a specified date as provided for by section 4 in view of referendum petition filed against such section, making it impossible to hold the special election on the designated date, but will take its natural course and be submitted at the next general election.

PETITION for Mandamus.     Original proceedings. Writ denied.

Messrs. Alexander & Christy and Mr. E. S. Clark, for Plaintiffs.

Messrs. Kibbey, Bennett, Gust & Smith and Mr. Will E. Ryan, for Defendant.

Mr. S. H. Kyle, *Amicus Curiae.*

PER CURIAM.—The plaintiffs, as residents, qualified electors, and taxpayers of the state of Arizona,

4. Power of courts to determine validity of action by legislature proposing constitutional amendment, note, **Ann. Cas.** 1914B, 925.

instituted this proceeding against the defendant, Secretary of State, praying that a writ of *mandamus* issue against said secretary, directing him to submit at a special election called for November 8, 1921, a certain amendment to the Constitution of the state, proposed, as it is alleged, by the two houses of the legislature, in accordance with article 21 of the Constitution. The proposed amendment to the Constitution is published in the Session Laws of Arizona of 1921, as chapter 85, page 185, and reads as follows:

"Chapter 85.   (House Bill No. 83.)

"An act proposing to amend the Constitution of the state of Arizona by amending section 5 of article 9 thereof, so as to provide for the issuance of state bonds to promote and assist in the reclamation and irrigation of arable and irrigable lands within the state of Arizona and providing for the submission of said proposed amendment to the electors of the state for their approval or rejection at an election to be called for such purpose.

"Be it enacted by the Legislature of the State of Arizona:

"Section 1.   That it is proposed to amend section 5 of article 9 of the Constitution of the state of Arizona to read as follows:

"Section 5.   The state may contract debts to supply the casual deficits or failures in revenues, or to meet expenses not otherwise provided for; but the aggregate amount of such debts direct and contingent, whether contracted by virtue of one or more laws, or at different periods of time, shall never exceed the sum of three hundred and fifty thousand ($350,000.00) dollars, except as hereinafter provided; and the money arising from the creation of such debts shall be applied to the purpose for which it was obtained or to repay the debts so contracted, and to no other purpose.

"In addition to the above limited power to contract debts, the state may borrow money to repel invasion, suppress insurrection, or defend the state in time of war; but the money thus raised shall be applied ex-

clusively to the object for which the loan shall have been authorized or the payment of the debt thereby created. No money shall be paid out of the state treasury, except in the manner provided by law.

"In addition to the above limited power to contract debts, the state may loan its credit to promote and assist in the reclamation of arable and irrigable lands within the state lying within the confines of irrigation districts regularly organized and existing under the laws of the state of Arizona and for such purpose may create bonded indebtedness and issue its bonds as may be provided by law whenever the lands in any such irrigation district and the water supply therefor and the proposed irrigation works and system thereof have been thoroughly investigated and found to be adequate and sufficient and the cost thereof per acre reasonable, and the building of the whole project feasible and advantageous to the state, and when adequate provision has been made by such irrigation district for the payment of such state bonds, interest and principal, as and when the installments of interest and principal thereof shall and may become due and payable.

"Section 2. It is hereby further provided that the state shall not be responsible or liable for more than five per cent (5%) of the state's total taxable valuation; and it is hereby further provided that the state shall not be responsible or liable for more than one and one-half per cent (1½%) of the state's total taxable valuation for any one project.

"Section 3. The validity of this amendment shall not be affected by the adoption of any other amendment to the said section 5 of article 9 of the Constitution of Arizona proposed or submitted by the regular session of the Fifth Legislature of the state of Arizona, and the adoption of this amendment shall not invalidate any other amendment to the said section 5 of article 9 of the Constitution of the state of Arizona proposed or submitted by the regular session of the Fifth Legislature of the state of Arizona.

"Section 4. That said proposed amendment shall be submitted to the electors of the state of Arizona for their approval or rejection at a special election which is hereby called for such purpose to be held

in manner provided by law, for general elections, on the 8th day of November, 1921.

"Passed the House March 2, 1921.

"Passed the Senate March 10, 1921.

"House concurred March 10, 1921, in Senate amendments by unanimous vote.

"Approved March 14, 1921."

When the plaintiffs' petition was filed the court directed the issuance of an alternative writ to the Secretary of State, and upon the return day he filed his answer in which he set forth:

(I) That the proposed constitutional amendment was not entered upon the journals of the two houses in compliance with the terms of the Constitution; (II) that the special election was not legal, because no adequate provision is made therefor, and the attempt to adopt the general election law by reference is in violation of the Constitution; and, (III) that a referendum petition had been filed against section 4, legal in form, and containing the constitutional percentage of voters, and thereby his power to submit said proposed amendment to the special election was suspended.

The plaintiffs filed their motion to strike the defendant's answer because it was to the petition, and not the writ. They also demurred generally to the answer. The case was argued on the 3d and 4th of the month, and counsel for both sides filed with the court informal statements of their points, and cited us to the authorities upon which they rely. It is evident that they have not had at their disposal the time necessary to investigate a question of such moment, and it is likewise true that the tardiness of instituting the proceeding deprives us of the opportunity to make very much independent investigation. In the limited time we have we can do very little more than give our conclusions.

The authority to propose amendments to the Constitution is found in section 1, article 21, of that instrument, and as much of what we shall say revolves around that section, it is here set out:

"Section 1. Any amendment or amendments to this Constitution may be proposed in either house of the Legislature, or by initiative petition signed by a number of qualified electors equal to fifteen per centum of the total number of votes for all candidates for Governor at the last preceding general election.

"Any proposed amendment or amendments which shall be introduced in either house of the Legislature, and which shall be approved by a majority of the members elected to each of the two houses, shall be entered on the journal of each house, together with the ayes and nays thereon.

"When any proposed amendment or amendments shall be thus passed by a majority of each house of the Legislature and entered on the respective journals thereof, or when any elector or electors shall file with the Secretary of State any proposed amendment or amendments together with a petition therefor signed by a number of electors equal to fifteen per centum of the total number of votes for all candidates for Governor in the last preceding general election, the Secretary of State shall submit such proposed amendment or amendments to the vote of the people at the next general election (except when the Legislature shall call a special election for the purpose of having said proposed amendment or amendments voted upon, in which case the Secretary of State shall submit such proposed amendment or amendments to the qualified electors at said [special] election), and if a majority of the qualified electors voting thereon shall approve and ratify such proposed amendment or amendments in said regular or special election such amendment or amendments shall become a part of this Constitution. Until a method of publicity is otherwise provided by law the Secretary of State shall have such proposed amendment or amendments published for a period of at least ninety days previous to the date of said election in at least one news-

paper in every county of the state in which a newspaper shall be published, in such manner as may be prescribed by law. If more than one proposed amendment shall be submitted at any election, such proposed amendments shall be submitted in such manner that the electors may vote for or against such proposed amendments separately.''

We think the courts all concur in holding, where the question has arisen, that the two branches of the legislature, in proposing amendments to the Constitution, under provisions like ours, are exercising delegated powers and acting as agents in a sense and are not functioning in a legislative capacity. The text on the question in 6 R. C. L. 28, section 19, is as follows:

''The power of the Legislature to initiate changes in the existing organic law is a delegated power, and one which is generally to be strictly construed under the limitations by which it has been conferred. In submitting propositions for the amendment of the Constitution, the Legislature is not in the exercise of its legislative power, or of any sovereignty of the people that has been intrusted to it, but is merely acting under a limited power, conferred upon it by the people, and which might with equal propriety have been conferred upon either house, or upon the Governor, or upon a special commission, or any other body or tribunal. The extent of this power is limited to the object for which it is given, and is measured by the terms in which it has been conferred, and it cannot be extended by the Legislature to any other object, or enlarged beyond these terms.''

Under article 21, an amendment to the Constitution may be proposed by initiative petition filed with the Secretary of State and be submitted to the vote of the people and approved and ratified by a majority of those voting thereon and become a part of the Constitution without any action whatever upon the part of the members of the legislature. In such case the proposed amendment would be submitted by the Sec-

retary at the next general election as a matter of course. If, however, the legislature should come to the conclusion that the public interest or the exigencies of the case demanded that the proposed amendment be voted upon at an earlier date than the general election, it is authorized by said article to call a special election for the purpose of voting upon the proposed amendment, whether initiated by the electorate or by the legislature.

Whether the legislature, in calling a special election acts in its capacity as a law-making body, or whether it is in the exercise of a delegated power that it makes the call, we think it unnecessary to decide in this particular case, for the reason that it seems to us that the legislature has done very much more than to call a special election. If it has done anything it has provided the machinery for holding the election and authorized the incurring of the expenses necessary therefor. Section 4, against which the referendum is filed, not only calls the special election, but adopts by reference a system of general laws, to wit, the general election laws, whether applicable or not. In other words, the procedure provided in the general election laws is required to be followed in holding the special election on November 9, 1921, in every respect except as to date.

It is a common practice throughout this country for legislatures to refer to other statutes and make them applicable to the subject of legislation in hand. Such reference statutes have for their object the incorporation into the act of which they are a part the provisions of other statutes by reference and adoption. This is done to avoid repetition. 25 R. C. L. 907, § 160.

In *People* v. *Crossley,* 261 Ill. 78, 103 N. E. 537, the court said:

"The effect of such reference is the same as though the statute or the provisions adopted had,been incorporated bodily into the adopting statute. 2 Sutherland on Statutory Construction, § 405. Such adoption takes the adopted statute as it exists at the time of the passage of the adopting act. . . . "

In *Savage* v. *Wallace,* 165 Ala. 572, 51 South. 605, it was said:

"There is a class of statutes, known as 'reference statutes,' which impinge upon no constitutional limitation. They are statutes in original form, and in themselves intelligible and complete—'statutes which refer to, and by reference adopt, wholly or partially, pre-existing statutes. In the construction of such statutes, the statute referred to is treated and considered as if it were incorporated into and formed a part of that which makes the reference. The two statutes coexist as separate and distinct legislative enactments, each having its appointed sphere of action; and the alteration, change, or repeal of the one does not operate upon or affect the other.' "

See *State* v. *Tausick,* 64 Wash. 69, 35 L. R. A. (N. S.) 802, 116 Pac. 651; *Hutto* v. *Walker County,* 185 Ala. 505, Ann. Cas. 1916B, 372, 64 South. 313.

The adoption of the general election law by reference, as is done in section 4, is then unquestionably legislation requiring not only the co-operation of the two houses of the legislature, but the Governor of the state, in order to be effective.

The Oregon Constitution, article 17, section 1, is:

"Any amendment or amendments to this Constitution may be proposed in either branch of the legislative assembly, and if the same shall be agreed to by a majority of all the members elected to each of the two houses, such proposed amendment · or amendments shall, with the yeas and nays thereon, be entered in their journals and referred by the Secretary of State to the people for their approval or rejection, at the next regular general election, except when the

legislative assembly shall order a special election for that purpose.''

It will be observed that the manner of submitting the proposed amendment to the people is very much like ours. Our legislature is authorized to ''call'' a special election, whereas the Oregon legislative assembly is authorized to ''order'' a special election. It is interesting to note that the legislative assembly of Oregon by separate act submits propositions to amend its Constitution to the people. At a special session of the legislature of Oregon held in January, 1920, several proposed amendments to the Constitution were agreed to by the legislative assembly. Subsequently at the same session chapter 35 of the General Laws of Oregon of 1920 was enacted, with an emergency clause calling a special election to be held on May 21, 1920, concurrently with the general primary election to vote upon the proposed constitutional amendments, and also some statutes. Later, in *State* v. *Rathie* (Or.), 199 Pac. 169–177, the constitutionality of one of the amendments voted upon and approved at the special election was raised, and the court said:

''The power of the legislature to submit the constitutional amendment to a vote at the special election is clear; article 17 of our present Constitution expressly so provides.''

Thus the legislature of Oregon, as well as its highest court, recognized that the ordering of a special election to vote upon amendments to the Constitution and providing for the manner and method of holding the election were legislation.

If there be appended to a proposed amendment by the legislature any measures essentially legislative or statutory in character, it must be submitted to the Governor for his approval before it can become a law. *Warfield* v. *Vandiver,* 101 Md. 78, 4 Ann. Cas.

692, 60 Atl. 538; *Nesbit* v. *People,* 19 Colo. 441, 36 Pac. 221. Chapter 85 took the ordinary course in enacting a law. It was presented to and approved by the Governor.

Whether the adoption by reference of the general election law concerning initiative and referendum measures (title 22, c. 1, Civ. Code 1913) includes the chapter of the Civil Code upon registration of voters, it may be doubted. If it does, it is not possible to comply therewith. Under the statute the period of registration is from May 1st to October 15th on even years only. Paragraphs 2880, 2883, Civ. Code. If in adopting the general election law, *supra,* it was the purpose to confine the voting to those upon the great register, which closed October 15, 1920, it would result in denying a large number of persons entitled to vote the right or privilege of expressing their wishes upon the proposed amendment to the Constitution. It must be true that a great number of persons, both men and women, since last October, have, by reason of arriving at voting age, or by reason of residence, become entitled to vote upon this measure. Under the statute such persons cannot vote unless they are registered. Paragraph 2901, Civ. Code. If electors entitled to vote have an opportunity to register and fail to do so, they may not reasonably complain. They should, however, be given an opportunity to register before they are disfranchised. The statute (paragraph 2879) provides that every citizen of the United States, twenty-one years of age or over, who shall have become a resident of. the state one year next preceding the election, and of the county and precinct in which he claims the right to vote thirty days, shall be deemed to be an elector of the state and entitled to register for the purpose of voting at all elections which are now or may be hereafter authorized by law. In the nature of things it is impos-

sible to preserve the rights of the citizens of the state who have become eligible voters since the close of the last registration, and yet under the statute they are entitled to register and vote at all elections. *Perry* v. *Whitaker,* 71 N. C. 475; *Capen* v. *Foster,* 12 Pick. (Mass.) 485, 23 Am. Dec. 632. So it may be said that the adoption of the general law on elections by reference to guide the special election on the proposed amendment to the Constitution is not only legislation, but in its ultimate results it is vicious legislation. Its effect in excluding from the great register those entitled to be thereon, as was said in *Perry* v. *Whitaker, supra,* "was manifestly a fraud upon the popular vote, although doubtless no fraud was intended." Article 21 in one place provides that proposed amendments to the Constitution shall be submitted "to the vote of the people." This all-inclusive proposition certainly extends to all those persons who are "entitled to register for the purpose of voting at all elections."

The plaintiffs cite subdivision 11 of section 1, article 4, of the Constitution, as governing the mode of procedure of special elections called for the submission of proposed amendments to the Constitution. That subdivision reads as follows:

"The text of all measures to be submitted shall be published as proposed amendments to the Constitution are published, and in submitting such measures and proposed amendments the Secretary of State and all other officers shall be guided by the general law until legislation shall be especially provided therefor."

The clear purpose of subdivision 11 was to supply a guide to the Secretary of State and other officers in submitting measures and proposed amendments during the interim between the adoption of the Constitution and the time when the legislature should meet and pass laws especially providing the machinery

for holding elections on measures and proposed amendments. Chapter 1, title 22, Civil Code of 1913, passed in 1912, especially provides how and when elections on such measures and proposed amendments may be had, and since its passage it, and not subdivision 11, is the guide to the Secretary of State and all other officers in submitting such measures and proposed amendments.

Under the law, unquestionably section 4 of chapter 85, which calls for a special election on November 8, 1921, and provides how such election shall be held and who shall be entitled to vote thereat as well, also the form of the ballot, is legislation, and subject to the referendum under subdivisions 1 and 2, section 1, article 4, Constitution.

If section 4 had been entirely omitted from the proposed amendment, it would have gone to the next general election as a matter of course, and, since the time designated in section 4 has, or will have, passed, and the date therein for the special election become an impossible date, the proposed amendment must necessarily take the natural course.

We do not deem it necessary to register our conclusions upon other points made in the pleadings and in the argument, having held that section 4 is subject to the referendum.