[No. 9575.    Department One.    March 19, 1912.]

ERNEST DAVIES *et al.*, *Respondents*, v. THE CITY OF SEATTLE *et al.*, *Appellants.*[1]

MUNICIPAL CORPORATIONS — EIGHT-HOUR DAY — LABOR BY TEAM-STERS.    Rem. & Bal. Code, § 6575, providing that all work by contract or day labor done for the state or any of its political subdivisions, shall be performed in work days of not more than eight hours a day, is violated by requiring city teamsters to harness and hitch their teams, collect their tools, and be at the place of work before the legal day begins, so as to put in eight hours "on the job," and thereafter return to the barn and unhitch and unharness their teams, putting in about an hour in excess of the lawful eight-hour day.

INJUNCTION—ADEQUATE REMEDY AT LAW—VIOLATION OF EIGHT-HOUR DAY LAW.    There is no adequate remedy at law and injunction lies to prevent the city from violating the eight-hour day law, where it employed many teamsters and required them to work in excess of eight hours a day or "quit the job," the employment being mutually satisfactory and agreeable; and the city is not prejudiced by the form of the decree, even if there is a remedy by mandamus.

Appeal from a judgment of the superior court for King county, Tallman, J., entered February 27, 1911, upon findings in favor of the plaintiffs, in an action for an injunction. Affirmed.

*Scott Calhoun* and *James E. Bradford*, for appellants.

*C. R. Hawkins* and *Edward Judd*, for respondents.

[1]Reported in 121 Pac. 987.

Gose, J.—Plaintiffs, at the time of the filing of this bill, were employed by the city of Seattle as teamsters, and as such were performing day labor in the street department of the city. The bill alleges that the city was then employing a great many teamsters in the street department as day laborers; that they were so numerous that it was impracticable to unite all of them in the action; that the wrongs for which redress is sought are common to all the men so employed, and that the action was prosecuted for the common benefit of all such employees. The bill further alleges that the defendants, the city of Seattle, its board of public works, and its superintendent of streets, for more than sixty days prior to the commencement of the action, had required and then required the plaintiffs and all other teamsters employed by the city as day laborers in street work, to work more than eight hours each day. The prayer is that the city, its officers and agents, be permanently enjoined from requiring the performance of more than eight hours' labor per day by the plaintiffs and all others on whose behalf the action is prosecuted. The defendants answered and denied that the plaintiffs were required to work more than eight hours per day. There was a decree for the plaintiffs. This appeal followed.

The record discloses without controversy that the city maintains five or six barns and owns its teams; that all teamsters performing day labor for the street department of the city (except as hereinafter noticed) are required to go to the barn each morning where their respective teams are kept, grease their wagons when necessary, harness and hitch their teams, collect their tools, and be at the place of work or, as the witnesses put it, "on the job," at eight o'clock a. m. and that after working eight hours "on the job," they are required to return the teams to the barn and unhitch and unharness them. The appellant Walters, the superintendent of the street department of the city, testified that harnessing and hitching the team, driving it to the place where the work was to be done, and returning it to the barn and unhitching

it after the teamster had put in eight hours' time on the work, would ordinarily consume about one hour each day. It further appears that, where the distance between the barn and the work is so great as to require more time going to and returning from the work, the city bears that burden.

Respondents' cause of action is based upon the statute, Laws of 1903, page 51 (Rem. & Bal. Code, § 6575 *et seq.*). Section 1 of this act, so far as applicable to the case at bar, is as follows:

"It is a part of the public policy of the state of Washington that all work 'by contract or day labor done' for it, or any political subdivision created by its laws, shall be performed in work days of not more than eight hours each, except in cases of extraordinary emergency."

The statute is so clear in its meaning and so free from ambiguity that it requires no construction. It means what it says, viz., as applied to the case at bar, that no day laborer shall be required to work more than eight hours a day except in cases of extraordinary emergency, and none is claimed in this case. The appellants offered evidence to the effect that, in the cities of Seattle, Tacoma, Spokane, Everett, and Bellingham, a custom has obtained since the enactment of this law, requiring teamsters to work eight hours a day "on the job.". This testimony was offered, not for the purpose of showing a custom in conflict with the statute, but as an aid to its interpretation. In all these cities, a teamster is required to harness and hitch his team, drive it to the work, work for eight hours "on the job," and then return his team to the barn and unhitch and unharness it. In Everett the additional burden of grooming the team is put upon the teamster. These witnesses justified the custom by saying that the excess time put in by the teamster is not work but, as they variously termed it, "choring" or "preparing for the day's work." Such construction is a palpable evasion of the law. The statute is so clear in its provisions that it requires no such aid in its interpretation. The respondents

are only asking that it be obeyed. It would seem, as the learned trial court observed at the close of the trial, that there could not be two opinions as to whether the respondents were working more than eight hours a day. If the excess time put in by the respondents was not work, then the inquiry is, what is work and where is the dividing line?

The argument *ab inconvenienti* is put forth. This argument has no place before a court where the meaning of the statute is clear. Such argument may be persuasive before the law-making branch of the government.

The appellants next contend that the respondents have other remedies, and that they can have no injunctive relief. In this state there is but one form of action for the enforcement or protection of private rights and the redress of private wrongs, and it is called a civil action. Rem. & Bal. Code, § 153. The rule, however, has been adopted in this state, as in most of the sister states, that injunctive relief will not be granted where there is a plain, complete, speedy, and adequate legal remedy. As was said in *Phelan v. Smith*, 22 Wash. 397, 61 Pac. 31: "Incompleteness and inadequacy of the legal remedy are what determine the right to the equitable remedy of injunction." The same view is announced in *Grant v. Cole*, 23 Wash. 542, 63 Pac. 263. In *Davis v. Wakelee*, 156 U. S. 680, it is said:

"It is a settled principle of equity jurisprudence that, if the remedy at law be doubtful, a court of equity will not decline cognizance of the suit. . . . Where equity can give relief plaintiff ought not to be compelled to speculate upon the chance of his obtaining relief at law."

"It is not enough that there is a remedy at law. It must be as practical and efficient to the ends of justice and its prompt administration as the remedy in equity." 16 Am. & Eng. Ency. Law (2d ed.), 355.

One of the respondents testified that, when the teamsters protested against the rule requiring them to work more than eight hours a day, the sub-foreman answered that it was a

general order, and that they could comply with it or "quit the job."

The appellants argue that section 12, art. 16, of the city charter furnishes the respondents an adequate remedy. It suffices to say that it applies only to employees who have been discharged. It is further argued that mandamus is the proper remedy. The respondents stated the facts upon which they relied in their bill. If they were entitled to the relief obtained, viz., to be relieved from working more than eight hours a day, the city is not prejudiced by the form of the decree.

The appellants have cited authorities to the effect that an employee, whether in the service of a municipal corporation or an individual, cannot maintain an action in equity to restrain his employer from discharging him. That this is the general rule may be granted. But it has no application to the case. The record shows that the respondents were content to remain in the service of the city, and that the city was satisfied with their service. The employment was mutually satisfactory and agreeable. If the appellants' contention should be upheld, the respondents would be required to continue to work more than eight hours a day or "quit the job." The law places no such alternative upon them.

It is finally said that the decree is too broad. When the record is read as an entirety, the decree operates only in favor of teamsters in the employ of the city as day laborers upon street work, driving the city's teams.

The decree is affirmed.

DUNBAR, C. J., PARKER, CROW, and CHADWICK, JJ., concur.