[No. 11235.   Department One.   August 7, 1913.]

E. W. STETSON *et al.*, *Appellants*, v. THE CITY OF SEATTLE
             *et al.*, *Respondents.*[1]

MUNICIPAL CORPORATIONS — LEGISLATIVE POWERS — INITIATIVE AND
REFERENDUM—ORDINANCES—TIME OF TAKING EFFECT.   Under Seattle
city charter, art. 4, § 1, adopting the principle of direct legislation,
and providing that ordinances may be referred to a vote of the peo-
ple, either upon petition of voters or by the council acting without
petition, the operation of an ordinance is suspended when submitted
to a vote by the council, although the charter does not expressly so
provide; since the principle of direct legislation would otherwise be
violated.

EVIDENCE—JUDICIAL NOTICE.   The courts can judicially notice
that it might be impossible to hold a referendum election within
thirty days after the passage of an ordinance.

MUNICIPAL CORPORATIONS — LEGISLATIVE POWERS — INITIATIVE AND
REFERENDUM—ORDINANCES—SUBMISSION—VALIDITY OF ELECTION.   Seat-
tle charter, art. 4, § 1, adopting the principle of direct legislation,
and providing that any ordinance may be submitted by the city coun-
cil "by itself without petition," does not require that the ordinance
shall call for its own submission, and it may be submitted by resolu-
tion.

SAME—POWERS OF COUNCIL—ORDINANCE—AMENDMENT—EFFECT AND
NECESSITY OF REFERENDUM VOTE.   Under Seattle charter, art. 4, § 1,
adopting the principle of direct legislation, and expressly super-

[1]Reported in 134 Pac. 494.

seding, in so far as conflicting therewith, par. 41 of § 18, art. 4, which gave the council the power to alter, amend or repeal any ordinance, the council has no power to alter, amend or repeal a referendum ordinance adopted by the people, but the same must be referred to the people under the simple referendum; especially where the referendum ordinance had not yet gone into effect pending the future date fixed by the people for it to take effect.

SAME—EMPLOYEES—REGULATION OF HOURS OF SERVICE—STATUTES —CONSTRUCTION. A referendum ordinance providing that employees in the marine fire department shall be divided into two platoons for day and night service, the hours for day service not to exceed ten, and for night service, not to exceed fourteen, must be construed as intended to fix the hours for service, and not merely the maximum, and is accordingly repugnant to an ordinance providing for three shifts and an eight-hour day for each shift.

MUNICIPAL CORPORATIONS — FIRE DEPARTMENT — HOURS OF LABOR— REGULATIONS—STATUTES—CONSTRUCTION. Under a Seattle city charter which does not classify the work of the fire department as public work, but excludes it from the jurisdiction of the board of public works, an employee of the fire department is not within art. 23, § 1, of the charter, providing that, in all public works done by the city either by day labor or by contract, eight hours shall constitute a day's labor; and such employee is not a day laborer or a mechanic, within an ordinance limiting the hours of all day laborers and mechanics employed upon any public works of the city to eight hours a day; nor within Rem. & Bal. Code, § 6572 et seq., providing for an eight-hour day on all work done by contract on public works for municipalities, or subsequent state laws applying only to "work by contract or day labor done."

Appeal from a judgment of the superior court for King county, Everett Smith, J., entered March 26, 1913, dismissing an action for equitable relief, upon sustaining a demurrer to the complaint. Affirmed.

*William Hickman Moore*, for appellants.

*James E. Bradford* and *William B. Allison*, for respondents.

CHADWICK, J.—The plaintiffs, who are employed by the city of Seattle in the marine fire department, have brought this action to compel the city to fix their hours of work under an ordinance No. 30730, to which we shall presently refer.

Prior to the adoption of ordinance No. 30730, the employees in the marine fire department were controlled by the provisions of ordinance No. 30039. This ordinance was passed by the city council of the city of Seattle on September 16, 1912, and was approved by the mayor on the following day. It provided that "from and after the 2nd day of April, 1913," firemen, other than the fire chief, should be divided into two platoons, one to perform day service and the other night service; "the hours of day service to be not to exceed ten, commencing not before 8 a. m. and ending not later than 6 p. m., and the hours of night service should not exceed fourteen, commencing not before 6 p. m. and ending not later than 8 a. m., except in cases of emergency," and "that in the work the said platoons shall alternate from day to night and from night to day each and every month, and that the ordinance should take effect and be in force from and after its passage and approval."

On the 23d day of September, the city council by resolution submitted ordinance No. 30039 to the people of the city of Seattle for their ratification or rejection. The resolution provided that the ordinance should be voted on at a special election to be held on the 5th day of November, 1912. The election was so held, and a majority of the votes cast were in favor of the ordinance. On the 27th day of January, 1913, the council passed, and the mayor approved, ordinance No. 30730, which provides that, from and after its taking effect, the engineers, pilots and stokers of the fire boats of the fire department of the city should be required to work eight hours per day, and no more, except in cases of emergency. When the ordinance became effective, the marine force was organized into three shifts of eight hours each, and at the time the complaint was filed, were working these hours.

On the 27th day of February, 1913, the chief of the fire department promulgated a special order to the effect that, commencing February 28, the day upon which ordinance No. 30730 went into effect, the marine force should operate

in three shifts of eight hours daily until April 2, 1913, after which time they should operate under the two platoon system, as provided in ordinance No. 30039; whereupon these plaintiffs, acting in their own behalf and in behalf of all others similarly situated, brought this action to restrain the defendants from enforcing the order of the chief of the fire department. A general demurrer was filed by the defendants and sustained by the court. From a judgment of dismissal, plaintiffs have appealed.

Various errors are assigned, and we will discuss them in their proper order. To do this, it is necessary to refer to the charter of the city of Seattle. The people of the city of Seattle have adopted the principle of direct legislation. A referendum vote of the people may be had upon any ordinance. It may be brought about in one of two ways: first, by petition signed by at least eight per cent of the qualified electors of the city; and second, by the council itself. That part of art. 4 of the city charter wherein provision is made for the simple referendum is as follows:

"Power of simple referendum as to ordinances; exceptions; by petition or by council:—The second power reserved by the people is the simple referendum, and it may be exercised and ordered (except as to ordinances necessary for the immediate preservation of the public peace, health or safety, and except as to ordinances providing for the approval of local improvement assessment rolls and providing for the issuance of local improvement bonds), as to any ordinance which has passed the city council and mayor (acting in their usual prescribed manner as the ordinary legislative authority of the city), either upon a petition signed by a number of qualified voters equal to not less than eight (8) per cent of the total number of votes cast for the office of mayor at the last preceding municipal election, or by the city council itself without petition."

"Charter provisions superseded:—Any provisions of this charter, and particularly any provisions in section 14 and paragraph 'forty-first' of section 18 of this article, insofar

as they are in conflict with the provisions of this section, are hereby superseded." Seattle charter, art. 4, § 1.

Section 14 referred to above is as follows:

"Ordinances, when to take effect:—No ordinance shall take effect until ten days after its passage, unless otherwise expressed in said ordinance. (See § 1, art. 4.)"

Section 18, par. 41, is as follows:

"Amendment and repeal of ordinances:—To alter, amend and repeal any ordinance or ordinances or parts thereof of the city. (See § 1, art. 4.)"

Appellants' first contention is that the ordinance had become a law at the time the election was held, and the election, therefore, could not operate except as an approval; and the council not having acted upon the advice of the voters, but having passed an act which provides for a different system and different hours of work, ordinance No. 30039 has been repealed. It is argued that the ordinance, by its terms and in virtue of the charter, became a law on October 18, 1912, three weeks before the day of the election; that, it being provided in the charter that "the filing of a petition shall operate to suspend the taking effect of the same pending the election," and no such provision being made where the ordinance is referred by the council, no act of the council or of the voters could operate as a suspension of the ordinance pending the election. It is urged that the legislative powers of the city are vested primarily in the council and mayor. This is true in a sense, but not entirely so. Where the principle of direct legislation has been adopted, the legislative power is primarily in the people, and the old rule that the legislative body has primary power must be qualified. It is primary, and at the same time it is a permissive power—a power subject to dictation and to control. "The first power reserved by the people is the initiative and referendum." Charter, art. 4, § 1. Therefore, upon any question involving the power of the council as compared with the power of the whole people,

we feel bound to hold that, when an ordinance is submitted to the people for their ratification or rejection, whether by act of the council or by petition, the ordinance must stand in abeyance pending such ratification or rejection, otherwise the very principle of direct legislation would be violated, or an election would have to be held at some time within the thirty days elapsing between the time of its passage and the time it would otherwise take effect. We can judicially notice the fact that this might frequently be an impossibility. Many ordinances and laws are passed by legislative bodies which have not had mature consideration, and not until they are enacted is their policy questioned. To hold that the city council must submit an ordinance to a referendum vote within thirty days would be to read out of the charter the provision providing for the simple referendum by the council.

It is next contended that the election has no legal or vital force because the ordinance did not provide that it should be referred. There is nothing in the charter that requires an ordinance to call for its own submission. The fact that an election may be called upon the petition of the voters implies that the people never intended that it should be so. This ordinance was submitted by a resolution of the council. The charter does not require any act on the part of the mayor. It says that an ordinance may be submitted "by the city council itself without petition." Charter, art. 4, § 1.

Having held that ordinance No. 30039 was properly submitted to the people and became a law by their direct vote, it now remains for us to consider the legal effect of ordinance No. 30730. We are concerned with the question whether it is within the power of the council to pass an ordinance which in effect alters, amends, or repeals an ordinance previously adopted by a referendum vote of the people. Counsel takes the broad ground that it must be provided somewhere in the law that the law or ordinance shall not take effect pending a referendum election, and by way of argument has called our attention to the amendment of the constitution,

subdivision "C," chap. 22, Laws 1911, providing that no law approved by a majority of the electors voting thereon shall be revoked or repealed by the legislature within a period of two years following its enactment. We are not called upon to decide whether, as an abstract proposition, this might or might not be the law, for we think that the last paragraph of § 1, art. 4, of the charter, which seems to have been adopted in order to amplify the section devoted to the referendum, settles any doubt that might arise as to the construction of that section. This paragraph must be read in connection with the referendum clause. It supersedes § 18 of the same article, which provides that the council shall "have power to alter, amend, or repeal any ordinance, ordinances or parts thereof" and is quite as effective, if not more binding upon the legislative body, than a provision fixing a time within which the council could not act. We think the charter, taken as a whole, must be held to mean that a referendum ordinance cannot be altered, amended or repealed by any less authority than that which called it into being. We do not question the right of the council to pass any amendatory or repealing ordinance as the charter is now framed, but we believe that it should be referred to the people under the simple referendum.

There is another reason which, in our opinion, will sustain the referendum vote of the people in this instance. By the terms of ordinance No. 30039 it is provided that the ordinance shall be effective from and after April 2, 1913. While the ordinance became a law, it had no force and there was nothing for it to operate upon until the lapse of time—not the time fixed in the charter, but the time fixed in the ordinance. To hold that the council can annul an ordinance passed by the people, pending the future date which a majority of the whole people have fixed for its operation, would be manifestly wrong. It would make the referendum a useless thing, instead of a valuable and controlling check upon hasty and

ill-advised legislation. If the complaint were not otherwise deficient, it would be held bad for the reason just stated.

The next proposition offered to sustain the complaint is that the ordinances are not antagonistic; that they may be construed together without doing any violence, either to the ordinances themselves or to any rule of statutory construction. It is argued that ordinance No. 30039 does not undertake to fix the number of hours the marine fireman shall work in a day, but only the maximum number of hours.

In considering laws passed by the direct vote of the people, a court should not presume anything that would negative the natural inferences that may be drawn from the act itself. The ordinance provides that there shall be two platoons, and fixed the hours that each platoon shall work. We would have to go beyond the terms of the law and resort to technical reasoning to follow counsel in his present contention. It is evident that the public considered the hours fixed in the ordinance, which are ten for day service and fourteen for night service. We find no merit in this contention.

Finally, it is contended that ordinance No. 30039 is in violation of § 1, art. 23 of the charter, wherein it is provided that "in all public works done by or for the city, either by day's work or by contract, eight hours shall constitute a day's work. . . . This article shall be enforced by the city council by ordinance."

Ordinance No. 5162 provides:

"That the services and employment of all day laborers and mechanics who are now or hereafter may be employed from time to time by the city of Seattle, or by any contractor or sub-contractor, upon any of the public works of the city of Seattle is hereby limited and restricted to eight (8) hours in any one calendar day . . ."

Reliance is also put on Rem. & Bal. Code, § 6572 (P. C. 291 § 115):

"Hereafter eight hours in any calendar day shall constitute a day's work on any work done for the state or any

county or municipality within the state, subject to conditions hereinafter provided."

As will be noticed, this section concludes with the words "subject to conditions hereinafter provided," and it must be construed with reference to the remaining section of the act of which it is a part. Laws of 1899, page 163, ch. 101, § 2; Rem. & Bal. Code, § 6573 (P. C. 291 § 116). The second section of the act provides that:

"All work done by contract or subcontract on any building or improvements or works on roads, bridges, streets, alleys or buildings for the state or any county or municipality within the state, shall be done under the provisions of this act: Provided, that in cases of extraordinary emergency, etc. . . . ."

It also provides that "*this act*" shall be made a part of all contracts for work done for the state or any county or municipality within the state. The third and last section imposes penalties on contractors, subcontractors or their agents who violate the provisions of the act. The act cannot be read to cover the case of the appellants without rejecting all of it except the first three lines, as well as ignoring utterly the enacting clause, which is as follows:

"An act to establish the number of hours to constitute a day's work on all state, county and municipal construction or such work done by contract or sub-contract, and providing penalties for its violation." Laws 1899, page 163.

This act must also be construed in the light of the subsequent enactment of the legislature. Laws of 1903, page 51, wherein it is provided:

"It is a part of the public policy of the state of Washington that all work 'by contract or by day labor done' for it, or any political subdivision created by its laws, shall be performed in work days of not more than eight hours each, except in cases of extraordinary emergency . . . ."

Subsequent sections refer to contract work. It was evidently passed to cure certain omissions in the previous act.

It provides that there shall be no case of "extraordinary emergency" where other labor can be found to take the place of labor which has already been employed for eight hours, and also directs the officers authorized to contract for or supervise the execution of any public work to cancel a contract if it is not performed in accordance with the declared policy of the state. The enacting clause of this piece of legislation is in keeping with the other.

"An act declaring it to be a part of the public policy of the state of Washington that all public work for it, or any political subdivision created by its laws, shall be performed in work days of not more than eight hours each. . . ." Laws 1903, p. 51.

This state has not legislated upon the subject of hours for men's work excepting in so far as it affects labor upon public works or work done "by contract or day labor done." Our laws, as they are at present written, apply only to those who work by the day and are paid by the day, or who come within the definition of contract labor upon public works.

That the people of the city of Seattle had in mind, and intended to preserve, this distinction is to be inferred, not only from the words of the charter and ordinance, but from the further fact that the charter has divided the several functions of the city and provided for their exercise by separate boards. Article 8 covers "the department of public works." In this article reference is made to such matters as would naturally be classed as public work. Article 11 covers "the fire department." There is nothing in this article that would suggest that firemen are laborers employed upon "any public works of the city." A further instance of popular construction is to be found in the ordinance quoted above. It will be remembered that the charter, § 1, art. 18, provides: "This article shall be enforced by the city council by ordinance." The ordinance, it will be seen, was drawn so as to include only *day laborers and mechanics* who may be employed upon any of the public works of the city. It

cannot be seriously contended that an employee of the fire department is either a day laborer or a mechanic within the meaning of this ordinance. The fact that the people have adopted a charter which does not classify the work of the fire department as public work, but on the contrary excludes it from the jurisdiction of the board of public works, makes this certain. Furthermore, the use of the words "contractor or subcontractor" would imply that the people of Seattle understood the words "public works" to mean such work as was usually done with day labor by contractors, or which might, if the council so ordered, be done by the city itself.

The case of *Davies v. Seattle*, 67 Wash. 532, 121 Pac. 987, is relied on. Davies was a day laborer, engaged in a work recognized as public work, and classified as such within the defined powers of the board of public works. Neither that case nor the case of *Wilson v. Zulueta*, 14 Q. B. 405, 19 L. J., Q. B. 49, mentions or meets the question we are now called upon to decide.

In the absence of a statute, courts cannot fix hours of labor. The privilege of fixing hours for respondents to work is with the people of Seattle, and respondents must look to them for their remedy.

Affirmed.

GOSE, PARKER, and MOUNT, JJ., concur.