No. 34,586

THE STATE OF KANSAS, ex rel. TOM HARLEY, County Attorney of Sedgwick County, *Appellee*, v. THE CITY OF WICHITA et al., *Appellants*.

(99 P. 2d 812)

Opinion filed March 9, 1940.

*Vincent F. Hiebsch, K. W. Pringle, Forest V. McCalley* and *Glenn Porter*, all of Wichita, for the appellants.

*Tom Harley,* county attorney, *Robert H. Nelson, Harold A. Zelinkoff, Grey Dresie, J. Ashford Manka, Dean Lachenmeyer,* deputy county attorneys, *W. D. Jochems, J. Wirth Sargent, Emmet A. Blaes, Roctzel Jochems* and *Robert G. Braden,* all of Wichita, for the appellee and as *amici curiae*.

The opinion of the court was delivered by

SMITH, J.: This was an action to enjoin the city commissioners, the city manager and the market master of the city of Wichita from

interpreting an ordinance in a certain manner and also to enjoin the enforcement of another ordinance. Judgment was for the plaintiff. The defendants appeal.

The petition stated two causes of action. In the first cause of action, after alleging the official position of the parties, the petition alleged that in 1929 the electors of Wichita voted $25,000 in bonds for the purpose of paying for and equipping a market place; that pursuant to this election a tract of land was secured and a market place built. An ordinance was enacted providing for the operation of the market, and farmers, growers and producers of vegetables and other produce began to use it. The petition further alleged that during the years 1936, 1937 and 1938 certain wholesale produce dealers brought pressure upon the city commission to close or restrict the operation of the market; that as a result of this agitation the commissioners ordered the market closed except between the hours of four o'clock and nine o'clock a. m.; that this was grossly inadequate for the needs of the farmers, producers, and growers selling upon the market and also for the needs of the grocers, dealers, caterers and other persons purchasing upon the market, and as a result thereof the market was unable to operate, and shortly thereafter failed to operate; that thereafter an ordinance was initiated by the people of the city in accordance with G. S. 1935, 12-107. This ordinance was submitted to the electors of the city and adopted by them. It was attached to the petition and marked "Exhibit A." This ordinance will be referred to hereafter as ordinance No. 12-137. The petition further alleged that pursuant to this ordinance the market was reopened and continued in operation up to the time of the filing of this action; that when the market was originally opened and since it was opened under ordinance No. 12-137 it was the practice of those who used this market to haul produce into it in automobiles or trucks and to rent a stall in the market where the produce would be exhibited and sold; that the method of exhibition of the produce had at all times consisted both of arranging it on the vehicles in which it was brought into the market and also placing it on the floor of the market within the confines of the stall. The petition further alleged that since the market had been reopened pursuant to ordinance No. 12-137 the same wholesale produce dealers of the city of Wichita who previously caused the closing of it started to again hamper and restrict its operation and had represented to the city commissioners that ordinance No. 12-137 should

be interpreted to mean that no produce could be exhibited in the market except and unless it was actually deposited and kept on a vehicle within the market and that no produce whatsoever could be exhibited by placing or arranging it off the vehicles; that on June 19, 1939, a motion was adopted by the commissioners, the substance of which was that all produce sold within the market must be sold from the vehicle on which it was brought to market and if any person who had rented a stall in the market removed therefrom his vehicle, his right to the use of the stall was thereby lost; that notice of this interpretation had been given to all farmers, producers, growers, truckers and all other users of the said market. The petition further alleged that this interpretation was wholly contrary to the express terms of ordinance No. 12-137, was arbitrary, unreasonable, capricious and unlawful and made for the purpose of hindering the operation of the market; that it would work an irreparable injury on the users of the market and the people of Wichita. The prayer was that the defendants be restrained from attempting to enforce this interpretation.

In the second cause of action the plaintiff alleged that the same produce dealers who had agitated for the closing of the market had also brought pressure upon the city commissioners to adopt a further ordinance to limit and restrict in an unreasonable and unlawful manner the sale of the produce upon the market; that on June 12, 1939, the ordinance, marked "Exhibit B," being ordinance No. 12-158, and attached to the petition, was adopted; that although this ordinance purported to be for the purpose of regulating persons or firms engaged in the business of wholesaling the produce there was no reasonable need for such regulations and they constituted an arbitrary and unreasonable interference with the wholesaling of produce in Wichita; that the assessment of any charge or license fee as prescribed in the ordinance was unnecessary and grossly in excess of the necessary cost of any regulation of wholesaling of produce and constituted an arbitrary, void and illegal charge or assessment upon the people of Wichita engaged in selling or offering for sale produce at wholesale; that the provisions of section 3 of the ordinance required the posting of a bond by any person engaged in such business was wholly and entirely unreasonable and arbitrary and unnecessary for the purpose of providing proper regulation of the business of wholesaling produce in the city of Wichita; that the ordinance was not enacted in good faith, but solely and entirely for

the purpose of hampering and restricting the sale of produce in the city of Wichita; that it would be impossible for a great number of persons engaged in the wholesale produce business to comply with the terms of the ordinance; that the ordinance was void because it constituted an attempt to amend and add to ordinance No. 12-137, whereas the defendants had no power to alter or amend that ordinance; that notwithstanding this ordinance was unreasonable, arbitrary, illegal and void the defendants were threatening to enforce it and had notified all persons engaged in the wholesale produce business that after June 29 they would be arrested unless they complied with it. The prayer of the petition was that the enforcement of this ordinance be enjoined.

The two ordinances will not be set out just now in the opinion, but will be referred to later.

For their answer to the first cause of action, the defendants admitted that the bond election was had and the market was constructed and that the ordinance No. 12-137 was passed, as alleged in the petition. The answer further alleged that a certain group of wholesale produce dealers who hauled commodities in from markets and other states and had no established place of business contended that ordinance No. 12-137 should be interpreted so that they could have an established place of business at a very small rental and that the expenses should be paid by the taxpayers of Wichita; that by the payment of one dollar per stall for each twenty-four hours, or two dollars for two stalls for each twenty-four hours, the members of this group contended they might establish a place of business in the public market in such stalls, stacking produce upon the cement floor and carrying on a general business in no way connected with trucks and wagons, except that trucks and wagons are used to haul in the produce and unload it within the market; that this group was backed in its contention by another group in the city of Wichita who contended for the same interpretation of the ordinance; that there was another group of produce dealers who had established places of business in Wichita and were backed by other citizens of Wichita who contended that the public market was constructed for the benefit of the public and was not for the benefit of wholesale dealers; that a fair interpretation of ordinance No. 12-137 was that the market was to be operated only as a market for the marketing of produce brought in by growers and others by truck to be sold and disposed of out of the truck, and the possession of the stall be re-

linquished to others who might bring in another load of produce; that this matter was set down for hearing by the board of commissioners of the city of Wichita and counsel appeared for both groups of wholesalers and as a result of this hearing a motion was passed as follows:

"Israel moved that it is the sense of this commission that ordinance No. 12-137 must be interpreted to provide that at the public market the sale of produce at wholesale must and can be made from trucks only. Therefore, the display or sale of produce at wholesale other than from trucks is prohibited by said ordinance, and as soon as the load brought in upon any truck is disposed of or the truck is removed, the stall or stalls occupied by it must be vacated. Motion carried."

At the same meeting another motion was passed as follows:

"Israel moved that inasmuch as an actual controversy exists over ordinance 12-137, as interpreted by this commission, between the city and certain wholesale produce dealers who operate at the public market, the city attorney is directed to bring an action under the declaratory-judgment law to secure a binding adjudication of right, as to the proper interpretation of said ordinance. Motion carried."

The answer further alleged that pursuant to the above motion the city attorneys, with the view of bringing an action against the dealers who contended for the construction of the ordinance contrary to the one adopted by the board of commissioners, conferred with the attorneys for this group in order that a judicial interpretation of the ordinance might be secured under the declaratory-judgment act. While these negotiations were in progress the above dealers induced the county attorney of Sedgwick county to bring the present action; that the city commissioners are interested only in having the true meaning of ordinance No. 12-137 determined.

As an answer to the second cause of action, the defendants admitted the passage of ordinance No. 12-158 and alleged that it was a valid and existing ordinance of the city.

For a cross petition in the first cause of action the defendants alleged that ordinance No. 12-137 was passed and that after the market was opened a certain group of wholesale dealers, most of whom hauled in produce purchased from the markets in other states and who had no established place of business, contended that under the terms of this ordinance they could establish for themselves a place of business in the Wichita market by renting one or two stalls permanently at a rental of one dollar to two dollars per day, depending on whether one or two stalls were rented, and that the Wichita

market under the terms of the ordinance was to be operated for the benefit of such produce dealers instead of for the benefit of the public, even though the taxpayers of Wichita had to pay the expenses of this market; that this contention on the part of this group was supported by another organization of citizens of Wichita; that another group of wholesale dealers contended that under the terms of ordinance No. 12-137 it provided a market for the benefit of the people and particularly of the growers who would bring their produce in by truck, sell it from their trucks and go back to their fields to gather other produce for the market and that by such action the stalls would be vacated as soon as the produce was disposed of and would be available for rental to other dealers, as provided under the terms of this ordinance; that under the method of operation contended for by the first class of wholesale dealers the members contended they could haul produce by truck and unload it upon their one or two stalls, stack it upon the cement floor, and immediately drive out the truck to secure another load, leaving a clerk to dispose of the produce; that the market place was a large building having ten double doors, that no screens can be put up before the doors, since the trucks are continuously driving in and out; that the building is a large building and that persons can go there day or night and large numbers congregate there; that due to the fact no obstruction could be placed before the doors, dogs wandered into it and it was impossible to keep it wholly free from such animals. The cross petition then alleged the meeting of the board of commissioners already described herein and the passage of the two motions that have been described and that an effort was being made to start an action for a declaratory judgment when this action was brought. The prayer of the cross petition was for an interpretation of ordinance 12-137, the initiated ordinance.

In a cross petition in the second cause of action the defendants set out the passage of ordinance marked "Exhibit B," and contend that it was a valid ordinance and pray that it be declared to be a valid ordinance. In reply to the answer and cross petition of defendants, the plaintiff denied all the allegations of the answers and cross petitions except those that admit the allegations of plaintiff's petition; plaintiff further denied that the controversy over the method of operation of the market grew out of the contention of any group of wholesale producers who hauled in produce purchased from the markets in other states, as alleged in the first cause of action, but alleged that the contention grew out of contentions made by whole-

sale dealers having established places of business in the city. The reply further denied that any group of persons ever made any contention that they could establish for themselves a place of business in Wichita permanently or that the Wichita public market was to be operated for the benefit of such produce dealers instead of for the benefit of the public and at the expense of the taxpayers of Wichita. Plaintiff alleged that the Wichita market showed an operating income in excess of the operating expense thereof and was operated at a profit to the city of Wichita instead of any expense to the taxpayers and further alleged that the market, if operated as contemplated by ordinance No. 12-137, would be for the benefit of the public and not to the detriment of the taxpayers of Wichita. The reply further alleged that the motion adopted by the commissioners, which had been set out in this opinion, was an attempt on the part of the commission to adopt a rule or regulation relative to the provisions of ordinance No. 12-137 and constituted an attempt on their part to amend its provisions and this amendment was contrary to the provisions of G. S. 1935, 12-107.

With the issues thus made up the case was submitted to the trial court. That court found generally for the plaintiff and enjoined the defendants from enforcing the interpretation of the ordinance referred to in the first cause of action, and enjoined the defendants from enforcing ordinance No. 12-158 as against any persons engaged in the wholesale selling of produce within the public produce market. Hence this appeal.

There is very little dispute as to the facts. It is apparent that all parties are seeking an adjudication of certain questions involved in the operation of the market. We will deal first with the question raised with reference to ordinance No. 12-137, known as the initiated ordinance. This ordinance was initiated and became effective pursuant to the provisions of G. S. 1935, 12-107. That section provides for the initiation of an ordinance by the electors of the city and for its becoming effective upon a favorable vote by the electors. The statute also contains a provision, as follows:

"Any ordinance proposed by a petition, or which shall be adopted by a vote of the people, cannot be repealed or amended except by a vote of the people."

The effect of this provision in this case is that once the electors of Wichita adopted ordinance No. 12-137 it could not be repealed or amended except by the provision for the amendment or repeal being submitted to the electors. That has not been done.

The next point for us to consider, then, is whether the interpretation challenged here amounts to an amendment. Before we consider that, however, we must dispose of another matter. Section 15 of ordinance No. 12-137 provides as follows:

"For the purpose of adopting and making effective the provisions of this ordinance, the city manager shall have authority to make supplemental rules and regulations for the conduct and administration of said market and control, management of the business thereof not inconsistent with, and for giving effect to the provisions of this ordinance, and the market master shall enforce same in accordance with the provisions hereof."

It will be noted that this section provides for the city manager making certain "supplemental rules and regulations" for the conduct of the market. It will also be noted that the interpretation set out in the answers filed in this action was made by the city commission. Had the interpretation contended for been made by the city manager we might have a different question here, since the section above referred to gives the city manager broad discretionary powers in making supplemental rules and regulations. Where an ordinance confers certain authority on the city manager it is the duty of that official to exercise the authority. The provision to which reference is made did not authorize the city manager to submit the question of what supplementary rules should be made to the commission. It directed him to make such rules as he deemed necessary for the conduct of the market. This view is strengthened by the fact that it does not appear that the authority contained in section 14 was the basis for the action taken.

It is clear from the record in this case that the city authorities, the county attorney, and the different groups of wholesalers, all desired an interpretation of what the ordinance actually provided irrespective of any supplemental rules that the city manager might make under the authority conferred on him. To that end the hearing was had before the commission, with the result that the resolution providing for the interpretation was passed and also a resolution directing the city attorney to bring a declaratory-judgment action to secure a binding adjudication as to the proper interpretation of the ordinance. While the form this action has taken is injunction against the city officials, the various answers and cross petitions that have been noted heretofore in this opinion present a question of whether the interpretation placed on this ordinance is a correct one. The city officials are going to follow this interpretation unless they are enjoined from doing so. If it is the correct interpretation they

should not be enjoined regardless of who made the interpretation in the first place. If it is an incorrect interpretation, they should be enjoined. Some time or another this court will have to interpret this ordinance. The judgment of the trial court has made this a proper action for such interpretation.

In the first place, the resolution of the city commission provided that the ordinance must be interpreted to mean that "the display or sale of produce at wholesale other than from trucks is prohibited by the ordinance, and as soon as the load brought in upon any truck is disposed of or the truck is removed the stall or stalls occupied by it must be vacated." It will be noted that this interpretation is two-fold. This presents two questions. To answer them we must examine ordinance No. 12-137.

Section 1 provided for the establishment of the market.

Section 2 provided that the city manager should cause the market to be divided into stalls of equal size, suitably spaced for the individual parking of trucks.

Section 3 divided the twenty-four hour day into two periods, called "market periods," one to begin at midnight, and end at noon, and the other to begin at noon, and end at midnight. It provided that the rate to farmers, growers or producers selling their own produce should be twenty-five cents per load for each stall during each market period and for persons other than farmers, growers or producers selling produce not of their own, fifty cents per load for each stall for each market period. It then contained the following provision:

"Each stall or space must be vacated as soon as the load is disposed of, and the city reserves the right to re-rent the stall when vacated for the remainder of any market period."

Section 4 provided for the appointment of a market master by the city manager.

Section 5 provided that the market master should exercise a general supervision over the market house, premises and appurtenances and enforce orders and assign and direct the placing of vehicles, stands and marketing privileges in conformity with the plan laid out so as to afford convenient access to patrons with the least possible interference; that he should take care that the market place and premises were kept clean and should prevent depositing of or accumulation of refuse or filth and should prevent exposure for sale in the market and order therefrom all blown, unsound, diseased and

impure, unwholesome produce and foodstuffs offered for sale; that he should examine weights and measures of produce sold and enforce generally the provisions of the ordinance.

Section 6 provided that the market master should keep a daily record of all receipts and collections, and for his giving bond.

Section 7 provided that the north eighty feet of the market building was declared to be a retail market for carrying on retail business of country produce brought into the market in wagons, autos, trucks or·trailers and that all the remaining portion of the building south of that part of the market building was declared to be a wholesale market for the wholesaling of country produce brought into the market in wagons, autos, trucks or trailers.

Section 8 provided that the market should remain open during certain hours and for its being closed on certain other days.

Section 9 provided for certain restrictions as to the retailing in the market.

Section 10 provided for certain places allotted for wholesaling during certain months.

Section 11 provided as follows:

"The manager of the city of Wichita may cause to be built division walls between the stalls in that part of the market building provided in this ordinance to be used for retail trade or business and cause the same to be equipped for the display of produce, and when properly equipped there shall be made to the users and occupants for such equipped stalls, a charge which shall be payable in advance to the market master, as follows:

"(a) Farmers or producers selling their own raising, 50 cents per load for each stall or space during each market period.

"(b) For all other persons than farmers or producers selling produce not of their own raising $1 per load for each stall or space during each market period, and the south twenty feet (20') of the market building provided in this ordinance to be used for retail sales, shall be reserved for the use of farmers who wholesale from the vehicle in which they bring produce into the market."

Section 12 exempted farmers, growers or producers from the provisions of certain ordinances with which we are not now concerned.

Section 13 set out certain regulations—

Regulation (a) prohibited the leaving of any discarded commodity or produce or other litter in the market place.

Regulation (b) forbade the sale of any unsound article.

Regulation (c) forbade domestic livestock being on the market place.

Regulation (d) provided that no obstructions such as barrels,

boxes, cases, crates or such should be deposited or permitted in the passageways, avenue or aisles.

Regulation (e) provided as follows:

"Every person or firm having occupied a stall or space in said market for the time allotted may be required to move his vehicle and effects therefrom unless with the approval of the market master as not inconsistent with the regulations thereof, he shall pay the fixed market charge as for a newly commenced period of occupancy."

Regulation (f) provided how bulk commodities should be sold.

Regulation (g) forbade loitering.

Regulation (h) forbade violent or turbulent conduct.

Regulation (i) provided that when a vehicle was so large that it could not be placed in one stall then the person in charge would be required to rent two stalls.

Regulation (j) provided no person should be permitted to use more than two stalls at any one time.

Regulation (k) provided that no lessee would be permitted to encroach upon an adjoining stall.

Regulation (l) provided as follows:

"All vehicles shall be placed in the stalls assigned immediately upon assignment in the manner directed by the market master."

Regulation (m) forbade the sale of fish and fresh meat.

Regulation (n) forbade having sleeping quarters or cooking food in the market.

Regulation (o) provided that the lessee who desired to do both wholesale and retail business must have a stall on each side of the market.

Regulation (p) forbade leasing the stalls for selling anything other than food products.

Regulation (q) forbade any person retailing in the south end of the market, which was declared to be a wholesale market.

Regulation (r) provided as follows:

"No lessee or licensee shall be permitted to transfer from one stall or stalls to another stall or stalls without first releasing such stall or stalls occupied and having assigned to him a new stall or stalls and paying the rent therefor as herein provided."

Section 14 of the ordinance gave the city manager authority to designate a certain room as a storeroom.

Section 15 has already been noted.

Section 16 provided a penalty for violation of the ordinance.

Section 17 provided that if any provision should be held unreason-. able or void it would not render the rest of the ordinance void.

Section 18 repealed all ordinances in conflict therewith.

It will be noted that in accordance with the generally accepted idea of a market, this ordinance treated the subject as though it was to be a place where food products were brought to the market in trucks and disposed of as quickly as possible with a minimum of overhead expense. The origin of market places lies in antiquity, but it is safe to say that the first ones were maintained at some particular spot in the ancient cities and provided a place where those who produced food could bring it for sale, and where they could be readily found by the citizen who wished to patronize them. That such was the idea of this market is clear from the many references to trucks and trailers, the division of the market place into stalls and of the day into two market periods, the provision that a stall must be vacated as soon as a load was disposed of and many provisions of similar import. We do not find any provision, however, that in terms requires all produce to be sold from trucks. Whether such a provision is to be implied from the terms of the ordinance will require a consideration of the evidence in the case.

In the first place there was evidence as to the practice at this market when it was first organized and before the enactment of ordinance No. 12-137. This evidence was to the effect that users of the market must either leave produce on their truck or put it on the floor; that if they had several varieties of merchandise on their truck they would have to uncover some of them and put some of them on the floor; that those who put produce on the floor would sometimes remove their truck from the building, and that was a common practice; that it was impossible to effectively display any load of produce and keep it entirely on the truck. This evidence was offered by plaintiff and was not contradicted.

After the market was first opened it closed for a while when the hours during which it should be kept open were curtailed. It was opened again after the enactment of ordinance No. 12-137. This ordinance appears to have been drawn with considerable care as to details. If the practice of displaying produce partly on the floor was as general as would appear from the evidence noted, then had the framers of ordinance No. 12-137 intended that produce should be sold from the truck only they would surely have included such a provision among the regulations that were a part of section 13 of the

ordinance. On the other hand, the undisputed evidence that it would be impossible to effectively display a load of produce without unloading part of it is a persuasive circumstance against reading a provision to that effect into the ordinance.

Considerable light may be shed upon this question by a consideration of the actual practice at this market with which the interpretation we are considering sought to deal.

There was evidence there was an average of seventy-five or eighty users of the market during the month before the trial of this action; that the local growers partially unloaded, but very few totally unloaded, their produce; that about three or four out of forty totally unloaded and took their trucks out of the market; that about eighty percent of those who are not local growers totally unloaded and took their trucks out of the building; that wholesalers came from Arkansas, Oklahoma and Missouri; that one of these was a potato operator; that he rented two stalls for about three weeks, used Wichita for a division point, sold potatoes in Great Bend, Dodge City and other towns; that during this time two stalls in the market were continuously occupied by him; that except right at first he at no time removed from the stalls rented when any load had been sold; that when he got low on potatoes he would back a truck in and unload some more and he kept a large total of potatoes on hand in these stalls during that time; that he paid fifty cents per stall for each twelve hours, or, in other words, two dollars per day to carry on the wholesale potato business in this space; that they hauled these potatoes from Louisiana and from around Muskogee, Okla.; that some of the trucks in which he brought potatoes would haul fifteen tons, and some of his trucks were not so large; that there were probably three or four others who occupied space in the south 220 feet of the market and operated in the same manner as Mr. Hess; that Mr. Hess claimed he was a grower, but the market master had no way of knowing whether or not he was buying these potatoes or raising them to sell; that until this last regulation was made, men such as this one, and others, would come in and ask to rent two stalls or one stall, whichever they wanted; that the market master would fix out a receipt and they would pay their rent until noon or midnight. If until noon, sometimes after twelve o'clock he would make out a ticket and collect again, which would pay them until midnight. And then about 2:30 in the morning he would collect again, which would pay them until noon. As a matter of fact, as far as Hess and

the other salesmen who operated as he did were concerned, there never was any attempt to make them vacate the stalls when their load was sold because they never got it empty, it was never all sold. They might only leave one sack there, which would hold the stall. One tomato or one cantaloupe left in the stall would hold it.

This evidence brings us to the real question in this case. The market was not intended as a place where jobbers in produce could come and conduct a business with only an outlay of two dollars a day. It was a practice such as this that the interpretation of the ordinance with which we are concerned was intended to correct. The defendants argue that the interpretation prohibiting the sale of produce other than from a truck is necessary to enable the market master to put a stop to this practice. This brings us to an examination of the second part of the interpretation. That was as follows:

"As soon as the load brought in upon any truck is disposed of or the truck is removed the stall or stalls occupied by it must be vacated."

Bearing on this interpretation is the provision of section 3 of the ordinance, which has already been quoted in this opinion. That provision prohibits in plain terms the practice such as that of the potato dealer described in the evidence. Clearly the intent of that provision was that only one truck load of produce could be sold during the time for which one market period was paid. The practice of leaving a sack of potatoes in the stall just to hold it was a subterfuge to evade the terms of the ordinance. The payment of the fee provided for a market period gave the lessee the right to dispose of one load of produce therein during that market period and no more. Regulation (e) of section 13 has already been quoted in this opinion. Under the clear provisions of that regulation when a dealer such as Hess had sold one truckload he should be required to move his vehicle and effects therefrom unless he gained the approval of the market master and paid for a new market period. To the same general effect is regulation (r) of section 13, which has already been quoted. We are unable, however, to find any provision that supports the interpretation that "as soon as  .  .  .  the truck is removed the stall or stalls occupied by it must be vacated." We see no provision in the ordinance which prohibits a truck from being unloaded and then being driven away so long as a new market period is paid for when the load is disposed of. We have considered the question of whether the interpretation about selling from trucks and the one about driving the truck away is necessary in order to enforce

the one about selling only one load during the time for which one market fee was paid. It does not appear to us that they are necessary. With so few users of the market following the practice, the market master should be able to handle the situation. It follows that while the judgment of the trial court enjoining the enforcement of the interpretation of the ordinance contended for by the city was correct, the ordinance is interpreted to mean that the payment of the fee for a market period by a wholesaler gives him the right to occupy a stall or stalls until the load he brought to market is sold, and when that load is sold he must either vacate and get the approval of the market master to occupy a new stall or pay again the market-period fee for the stall or stalls he has been occupying.

The next question is that raised in the second cause of action. In this cause of action the trial court enjoined the enforcement of ordinance No. 12-158. This ordinance provided in general as follows:

Section 1 provided who should be considered wholesale dealers in fruits, berries, vegetables or melons.

Section 2 provided that no person should engage in such business until he should have paid the license fee, secured the license, and furnished the bond provided.

Section 3 provided for one wishing to engage in such business to furnish certain information; that he should file with the city clerk a surety bond, or a private bond, provided that he deposit with the city treasurer $2,000 in bonds of the United States, the state of Kansas or of the city of Wichita. It was provided that this bond should be conditioned that the dealer would pay all liability devolving upon him for which he might become liable because of misrepresentation or fraud and that if the dealer could show that he owned real estate of the value of $5,000 in Wichita he could sign his own bond.

Section 4 provided a license fee of ten dollars and five dollars for each additional truck.

Section 5 provided for the issuance of a license containing certain information.

Section 6 provided that the license would authorize the holder to sell only the produce actually owned by him unless he should have secured a license as a commission merchant.

Section 7 provided for inspection by the city health officer.

Section 8 provided that no produce should be offered for sale except at the place described in the license.

Section 9 provided a penalty for violation of the ordinance. It

will be noted that the above ordinance covers the field of regulation of wholesale dealing in fruits, berries, vegetables, melons and other produce of like nature.

The attack leveled at this ordinance by plaintiff is, first, that sections 2 and 3 of it constitute an amendment to and an alteration of ordinance No. 12-137. In connection with this argument we must note that a provision of section 3 of that ordinance is as follows:

"All persons selling produce shall comply with all the requirements relating to license required by other ordinances of the city of Wichita now in effect and not hereby repealed or inconsistent herewith."

This provision leads us to examine what ordinances relating to license requirements were in effect when ordinance No. 12-137 was enacted. Ordinances 11-524 and 11-607 were both in effect. In ordinance 11-524, section 2 prohibited any person from selling by wholesale or retail "berries, vegetables, melons or other produce" without having procured a license. Section 3 provided for the obtaining of a license or furnishing certain information and giving a bond for $500. Section 4 prohibited any grower from selling produce in the city to any hotel for the purpose of resale without registering with the city clerk and paying a fee of one dollar. Section 5 provided a license fee of ten dollars for each person and five dollars for each additional truck. The ordinance contained additional sections with which we are not concerned here. Ordinance 11-607 provided in the first section for the amendment of the first section of ordinance No. 11-524. This section also contained, among other things, the following provision:

"Provided further, that any wholesale producer dealer, as hereinafter defined, who sells, offers for sale or exposes for sale produce only at the public wholesale produce market operated by the city of Wichita, shall not be required to comply with sections 2 and 3 of this ordinance relating to the securing of a license, the furnishing of a bond and the designation of an established place of business."

It will thus be seen that when the electors of Wichita adopted ordinance No. 12-137 with the provision in section 3, that has just been quoted, it was intended that the city governing body should not adopt any ordinances with reference to business conducted at the market place that would have the effect of changing the law as it existed at the time the ordinance was adopted. Our question then is whether the provisions of G. S. 1935, 12-107, take away from the city governing body the power to do that. In *Stetson v. Seattle*, 74 Wash.

606, 134 Pac. 494, an ordinance had been adopted by the electors of the city. This ordinance fixed the hours which firemen should work. Thereafter the city council passed an ordinance providing for eight-hour shifts. It was contended that the second ordinance was valid because it was not inconsistent with the ordinance upon which the people had voted. It is not clear whether the charter of the city, which provided for referendum ordinances, prohibited the amendment or repeal of an ordinance in as plain terms as does the statute we are considering. In any event, the court said:

"We think the charter, taken as a whole, must be held to mean that a referendum ordinance cannot be altered, amended or repealed by any less authority than that which called it into being. We do not question the right of the council to pass any amendatory or repealing ordinance as the charter is now framed, but we believe that it should be referred to the people under the simple referendum." (p. 612.)

The court further held:

"In considering laws passed by the direct vote of the people, a court should not presume anything that would negative the natural inferences that may be drawn from the act itself. The ordinance provides that there shall be two platoons, and fixed the hours that each platoon shall work. We would have to go beyond the terms of the law and resort to technical reasoning to follow counsel in his present contention. It is evident that the public considered the hours fixed in the ordinance, which are ten for day service and fourteen for night service. We find no merit in this contention." (p. 613.)

In *Allen v. Hollingsworth,* 246 Ky. 812, 56 S. W. 2d 530, in considering a similar question, the court said:

"Looking for specific authority in relating to referendum acts of general operation or concerning municipal legislation along other lines, it is found that in order to render the plan of referendum effective, the legislative power of the city council is commonly restricted by the express provision that no ordinance or amendment to an ordinance adopted by the electors shall be repealed or amended by the council. 'In such cases an ordinance or amendment thereto adopted by a vote of the electorate can be repealed or amended only in the same manner.' (McQuillen on Municipal Corporations, sec. 865.) Such specific limitations on the power of the board of commissioners is not made by the statute under consideration, but we think the restriction is there by implication. Such is the rationale of the decisions we have cited. The fixing of salaries was no less the act of the people than the establishment of the form of government by the same vote." (p. 820.)

See, also, ·*State, ex rel. Knez, v. Seattle,* 176 Wash. 283, 28 P. 2d· 1020.

The conclusion is inescapable that the electors, when they adopted

ordinance No. 12-137, intended that it should go into effect and be construed together with ordinance Nos. 11-524 and 11-607. Ordinance No. 12-158 provided additional burdens and regulations for the wholesaling of berries, vegetables, fruits and other produce beyond that contemplated by the electors when ordinance No. 12-137 was adopted and has the effect of amending that ordinance.

It follows that the judgment of the trial court on the first cause of action is modified so that the defendants are not to be enjoined from interpreting ordinance No. 12-137 to mean that as soon as the load brought upon any truck is disposed of the stall or stalls occupied by it must be vacated, and the judgment of the trial court on the second cause of action is affirmed.