# THE STATE ex rel. BETTER-BUILT HOME & MORT-GAGE COMPANY v. J. LIONBERGER DAVIS et al.

### In Banc, February 11, 1924.

PROHIBITION: City-Plan Commission: Legislative Act.   A city-plan commission, appointed by the mayor and council, in pursuance to the Act of 1921, Laws 1921, p. 482, is not a judicial body and does not exercise judicial functions in holding hearings upon tentative or proposed ordinances, although the city council can enact only such ordinances on the subject as the commission first recommends. At the hearings the commission cannot conclude any property right of the citizen, nor are its conclusions, divisions of the city into residence and other zones, and the ordinances drawn by it for the purpose of giving effect to such divisions anything more than advisory; they have no concluding force or effect until the recommended ordinance is enacted by the law-making body, which has power to reject it or enact it.   Consequently, a writ of prohibition, to prevent such commission from holding hearings, recommending zones and drawing up ordinances in harmony with their recommendations, to be submitted to the council, will not lie.

## *Prohibition.*

PRELIMINARY RULE DISCHARGED.

*Conway Elder* and *Leahy, Saunders & Walther* for relator.

(1)   The Act of 1921 (Laws 1921, p. 481), is unconstitutional because:   (a)   The act therefore includes all cities of the third and fouth classes, but only those of the second class having a population between 30,000 and 50,000.   Thus cities of the second class between 50,000 and 100,000 inhabitants have different powers, with respect to zoning, than cities of that class having less than 50,000 inhabitants.   Such a classification is unconstitutional.   Ward v. Paving Co., 79 Fed. 391; Harris v. Bond Co., 244 Mo. 664, 688; Owen v. Baer, 154 Mo. 434; State ex inf. v. Borden, 164 Mo. 221; St. Louis v. Dorr, 145

Mo. 466; Murnane v. St. Louis, 123 Mo. 480. (b) The act is void because it contains more than one subject and the subject is not clearly expressed in the title. State ex inf. v. Borden, 164 Mo. 221. (2) The act violates the provisions of the State and Federal Constitutions, for it attempts to authorize a taking of private property without just compensation. St. Louis v. Dorr, 145 Mo. 466; St. Louis v. Hill, 116 Mo. 527; Bostick v. Sams, 95 Md. 400; Eubank v. Richmond, 226 U. S. 137; Varney v. Williams, 155 Col. 318; Com. v. Boston, 188 Mass. 348; Quintin v. Board of Aldermen, 64 Miss. 483; State v. Whitlock, 149 N. C. 542. (3) The act is also unconstitutional because it attempts to authorize the taking of private property for a private purpose. The act provides that the uses of property may be regulated ''to conserve the value of buildings and enhance the value of land.'' Byrne v. Md. Realty Co., 129 Md. 202; Atty.-Gen. v. Williams, 174 Mass. 476; Quintin v. Aldermen, 64 Miss. 483. (4) The act is unconstitutional because it attempts to authorize the regulation of real property and to limit the use thereof for purely esthetic or artistic considerations. St. Louis Gunning Co. v. St. Louis, 235 Mo. 99. (5) Prohibition is extended to administrative officials when their duties are marked with the slightest judicial character. The respondents come within that class. State ex rel. Guaranty Co. v. Harty, 276 Mo. 583.

*Clarence L. Wolff* and *Atkinson, Rombauer & Hill* for respondents; *John E. Turner, Robert A. Roessel* and *D. D. Holmes,* of counsel.

(1) The functions, powers and duties of the City-Plan Commission in holding hearings on proposed plans and in making recommendations thereon to the board of aldermen are of an administrative and legislative character only, and rendered only in an advisory capacity

to said board, and have no legal or binding effect, and for that reason the permanent writ should be denied to relator in this case.   (a)  In prohibition a motion filed by relator for judgment on the pleadings admits such facts in the return as are well pleaded.  State ex rel. Caron v. Dearing, 291 Mo. 169.   (b)  This one jurisdictional and primary question is the only question legally before this court for determination.  In prohibition proceedings only matters of jurisdiction will be considered, and questions which go to the merits of the case cannot be considered.  State ex rel. Gavin v. Muench, 225 Mo. 227; State ex rel. Brady v. Evans, 184 Mo. 641; State ex rel. Caldwell v. Cockrell, 280 Mo. 281; State ex rel. Hofman v. Scarritt, 128 Mo. 338; State ex rel. Green v. Henderson, 164 Mo. 360; 22 R. C. L. p. 32, sec. 33.   (c) All of the duties to be performed by said City Plan Commission, as provided for by said Zoning Act of 1921, and city ordinances passed by the city, are either of an administrative or legislative character.  All of the duties to be performed by the zoning commission are of an advisory and recommendatory character only.  No obligation rests upon the board of aldermen of said city to accept a single recommendation or idea or suggestion submitted to it by said Plan Commission.  No legal obligations rest upon the board of aldermen to enact any zoning ordinances as proposed by said City-Plan Commission in the adoption of any plan or restrictions as applying to property within said city.    State ex rel. McEntee v. Bright, 224 Mo. 527; State ex rel. Fabrico v. Johnson, 293 Mo. 309.

GRAVES, J.—Original proceeding in prohibition. Relator has made a very full statement of the case, which is one made purely by the pleadings and a motion for judgment thereon.  Counsel concedes the fairness of this statement.   We think that a somewhat shorter statement will suffice.  The pleadings consist of the petition for our writ of prohibition, and the return of respond-

310     SUPREME COURT OF MISSOURI,

State ex rel. Better-Built Home & Mort. Co. v. Davis.

ents thereto, and a closing of all issues by a motion for judgment as aforesaid. Relator charges that it was the owner of fifteen acres of ground in Clayton, Missouri, and fifteen acres in city of St. Louis adjoining: that it duly and legally platted said fifteen acres in Clayton so that it could be used for the erection of flats and apartment buildings, and had obtained permits from the city of Clayton for the erection of such buildings upon portions thereof. We omitted, in the regular order, to say that when the plat was presented to the board of aldermen of said city for approval, owners of property in two adjoining additions objected to the plat being approved, for the reason that it contained no restrictions as to the character of buildings which might be erected; that said property owners induced the board of aldermen to refuse to approve the plat by agreeing to pay the costs of litigating the matter, and thus compelled the relator to seek a mandamus in the St. Louis Court of Appeals, which it did, and which writ was issued by said court, and it is not denied that these property owners, whose ends had been defeated by the granting of a mandamus against the board of aldermen compelling such board to approve relator's plat, then sought to have the said city pass an ordinance providing for a city-plan commission, and a zoning ordinance, the costs and expenses all being guaranteed and paid by the opposing property owners aforesaid, and who had guaranteed and paid the costs of the mandamus proceeding aforesaid.

Relator had bought its property at a cost of $165,000 and had gotten it without restrictions of any character. Upon the guaranty of costs and expenses by the objecting property owners, the city passed an ordinance creating a city-plan commission, and this plan commission, after an engineer had been employed for the purpose, prepared a tentative zoning ordinance, and an accompanying plat, by which the property of relator was placed in what was denominated Class A Residence dis-

trict, and thus proposed to restrict the use of relators' property to single residence dwellings, and some other limited uses, the details of which are immaterial.

Under the City-Plan Commission ordinance, the respondents, who constituted the City-Plan Commission, were about to begin a series of hearings upon this tentative zoning ordinance before making a final report, and final draft thereof for adoption by the board of aldermen. The fact that opposing real estate interests were back of these ordinances, and paying the city expenses therein is immaterial upon the real questions involved, but is another demonstration that the so-called public spirit back of zoning ordinances is usually the private interest of certain property owners. The zoning was being attempted under and by virtue of an act approved April 1, 1921, Laws 1921, page 481. Relator challenges the validity of this law, as well as the city ordinance creating the City Plan Commission, mentioned above. Respondents decline to go into the merits of either the ordinance or the law, resting their defense upon the ground that prohibition will not lie against the City-Plan Commission. The validity of their proposed zoning plan and ordinance, or the validity of the law under which the ordinance will have to be enacted, they are opposed to having determined in this proceeding. Both would be invalid under the late ruling in State ex rel. v. McKelvey, recently decided, on the ground of taking private property for public use without compensation, if not upon other grounds. That is to say, the law would be invalid if it undertook to grant authority to a city board of aldermen to pass an ordinance which would restrict legitimate uses of private property without just compensation to the owners thereof. As ruled in McKelvey's Case, supra, the State cannot authorize the passing of a zoning ordinance, which would restrict the use of private property for legitimate purposes. This outlines the case.

I. The relator contends that, under the City-Plan Commission ordinance, the defendants, the City-Plan Commission, are exercising judicial functions, in the holding of these hearings upon the tentative or proposed zoning ordinance. The powers of the City-Plan Commission are thus stated in section five of the ordinance, which created the commission:

Ordinances.

"Sec. 5. *Powers and Duties.*—The powers and duties of the commission shall be to prepare a comprehensive plan or plans showing its ideas and recommendations of a zoning system, covering the whole or any part of said city, together with its recommendations as to restrictions and other questions or issues therewith connected, and provided such outlines, drawings, maps or plans covering the whole or any portion of said city, and of the lands outside of said city, that in the opinion of the commission bears relation to the welfare or beauty of the city or its inhabitants; and the said plan or plans shall show the commission's ideas and recommendations relative to the location, length, width and arrangement of streets, alleys, bridges, viaducts, parks, playgrounds, boulevards or other public grounds or improvements; the platting of public property into lots, plots, streets, alleys, railroad or street car lines, transportation or other channels for communication of any kind; the grouping of public buildings, the design and placing of any memorials, works of art, power or lighting plants, street name signs, billboards or projecting signs, and all other things pertaining to the welfare, housing, appearance or beauty of said city or any portion thereof."

This is from Ordinance No. 251 of the city of Clayton, which ordinance was approved by the mayor on January 9, 1923. Purporting to act under the authority of said Ordinance No. 251, supra, the City-Plan Commission prepared a lengthy zoning ordinance for such city, and with it and as a part thereof a plat of such city conforming to the prepared ordinance. This ordinance and plat were presented to the board of aldermen.

The alleged charter power for such proposed ordinance is Section 4 of the Act of 1921 supra (Laws 1921, p. 482), which reads:

"Sec. 4. *City planning commission to act, when.*— In a municipality having a city planning commission, the mayor or council shall require such commission to recommend the boundaries of districts and appropriate regulations to be enforced therein. Such commission shall make a tentative report and hold public hearings thereon at such times and places and upon such notice as said mayor or council shall require before submitting its final report. The council shall not determine the boundaries of any district nor impose any regulations until after the final report of such city planning commission. In any municipality where there is no city planning commission in existence the mayor or council may appoint either a committee or a special commission, whichever it deems most suitable, to exercise the powers given to the city planning commission by this section. After such final report is submitted to the council, and final adoption of regulations by the council, the council may, from time to time, amend, supplement or change the boundaries or regulations so adopted, provided such proposed change shall first be submitted to the city planning commission, or special committee or commission, for recommendation and report, and provided further that not less than thirty days notice of any such proposed change shall first be published in the official newspapers for publication in such municipality and a hearing be granted to any person interested at a time and place specified in such notice. If, however, a protest against such amendment, supplement, or change be presented, duly signed by the owners of twenty per cent or more of any frontage proposed to be altered, or by the owners of twenty per cent of the frontage immediately in the rear thereof, or by the owners of twenty per cent of the frontage directly opposite the frontage proposed to be altered, such amendment shall not be passed except by the unanimous vote of the council."

Under this alleged charter power, the City-Plan Commission gave public notice fixing the dates for hearing for each of the five wards of the city. The proposed zoning ordinance was the "tentative report" of the City-Plan Commission, under this statute, and the public hearings ordered were in response to this statute. Would those hearings be judicial in character, so that the City-Plan Commission could be reached by a proceeding of prohibition? This is the sole question respondents have briefed, and the first vital question for consideration. Of this question next; and others later, if necessary.

II. The evident purpose of these hearings is for the City-Plan Commission to get the views of those interested (the property owners of the city) upon their proposed zoning ordinance, being the tentative report to the law-making body of the city. To my mind these hearings are merely advisory to the City-Plan Commission, and the views obtained to be considered before the drafting of the final report. The commission itself is but an advisory body to the legislative body of the city. The determination reached by the commission neither takes nor adjudicates the property rights of the citizen. There is a hearing, it is true, but the conclusions reached by the hearing cannot take a single right from the citizen. It is not until the law-making body puts the final report into the shape of an ordinance that the rights of the citizen are touched. But it is urged that the law-making body can do nothing but enact into law, or rather ordinance, the report of the Plan Commission. If this were in fact true, it would not make a judicial body of the Plan Commission. It would remain but an advisory body for the law-makers, and if the law-makers had to adopt the ordinance proposed, it would be a mere limitation on the law-making power. And upon the other hand, if it be said that the law-makers could not act until the Plan Commission had acted this also would simply be a limitation upon the law-making

*Judicial Action.*

power, and nothing more. [Findlay-Kehl Inv. Co. v. O'Connor and Kansas City, 256 S. W. 798.]

So it is immaterial whether the lawmakers cannot act before the action of the commission, or whether or not such body must enact into ordinance their report. In either event the Plan Commission is but an advisory body to a legislative body, and not a body with judicial functions. This is made plain by that provision in the law which provides that in the absence of a City-Plan Commission, the mayor or council may appoint either a committee or special commission, with the same duties and powers of the so called City-Plan Commission.

State legislative bodies often appoint a committee to ascertain conditions to the end that the law-makers may be advised as to the necessity of a law covering the situation. The hearings of such committee would not be judicial in character, and could not be stopped by our writ of prohibition. A City-Plan Commission is but a standing committee or body advisory to the legislative body, and in that sense might be denominated a· part of the legislative machinery.

It is urged that the legislative body can pass no ordinance, except such as is recommended by the City-Plan Commission. If this contention be granted, as said above, it would simply be a restriction upon the legislative power, and would not make the acts of the Plan Commission judicial in character. But we do not so read Sec. 4 of the Act of 1921 (Laws 1921, p. 482), and do not believe that the legislative body is thus tied hand and foot. In the first place this law contemplates a "tentative report" from the Plan Commission. "Report" as here used does not necessarily mean an ordinance or a tentative ordinance. After the hearings the law contemplates a "final report," but nothing in the law contemplates a proposed ordinance. The word "report" is used throughout. Of course both reports might be in the shape of a proposed ordinance. But all this does not mean that the counsel must adopt such final report as incorporated in a proposed ordinance. The language used

is, "The council shall not determine the boundaries of any district nor impose any regulations until after the final *report* of such city-planning commission." This does not mean that the council must swallow "hook and line" this final report. It means that the council is precluded from fixing district boundaries and imposing regulations until after the planning commission of the particular city has given, by its final report, all the information which it could gather.

Merely compelling the council to await the final report before acting, does not mean that such report, and such report only, shall be enacted into an ordinance. The language of the law leaves the council free to act after such final report has been made. If the council saw fit to then establish different boundary lines and different regulations, in my judgment it could do so. Certain it is that there is no language used in the act which would prevent the council from refusing to enact the report into an ordinance. Had it been the purpose of the lawmakers to compel the legislative body to enact the report into an ordinance appropriate language to that end would have been used. It was not used, and we must rule that the Act of 1921 evidences no legislative intent to compel a city council to enact into an ordinance the final report of the City-Plan Commission. No right of the property owner is taken or injured until there has been legislative action. Legislative action cannot be prohibited by the courts, although the courts can reach the finished product (the ordinance) after the enactment thereof.

III. The preceding paragraph determines this case, because if this City-Plan Commission was not performing an act judicial in character, prohibition will not lie. Learned and distinguished counsel for relator urge that the writ of prohibition is not always strictly confined to courts, but that such writ may be used to reach other bodies. This is true, provided such other bodies are undertaking to perform judicial functions. We find no fault with the rules announced in the

Prohibition.

cases cited by learned counsel, but the facts of this case do not bring it within the rules announced in those cases.

It follows that our preliminary rule in prohibition was improvidently issued, and such rule should be discharged, and the peremptory writ denied. It is so ordered.

*Woodson, C. J.,* and *David E. Blair, Walker* and *White, JJ.,* concur; *James T. Blair* and *Ragland, JJ.,* concur in paragraphs 1, 2 and 3 and the result.