219 P.2d 765

**WARD et al. v. INDUSTRIAL COMMISSION OF STATE OF ARIZONA, etc.**

No. 5326.

Supreme Court of Arizona.

June 19, 1950.

272

Walton & Walton, of Phoenix, Richey & Herring, of Douglas, Beumler & Beumler, of Douglas, for appellants.

Donald J. Morgan, Phoenix (H. S. McCluskey and Robert E. Yount, Phoenix, of counsel), for appellee, Industrial Commission of Arizona.

PHELPS, Justice.

This case comes to us on an agreed statement of facts to the effect that appellant Ward and others brought several separate causes of action in the Superior Court of Cochise County against Southwestern Mines, Inc., a corporation, and others, who claimed some right, title or interest in certain mining claims owned by the Southwestern Mines, Inc., and the Leadville Mining

Company, seeking to foreclose certain labor and materialmen's liens against said claims. The Industrial Commission of Arizona was made a party defendant. It answered, setting up its lien under the provisions of section 56-948, A.C.A.1939, for unpaid premiums on compensation insurance covering the workmen engaged as laborers in the mining operation involved. It alleged statutory priority and joined in the prayer for foreclosure.

The various causes of action were consolidated for trial in the superior court.

The question presented to the trial court was: Which of the various liens being foreclosed were entitled to priority and in what order must they be paid? Those portions of the findings and judgment of the trial court from which an appeal has been prosecuted to this court are as follows:

"That the lien of the Industrial Commission of the State of Arizona, is prior to all other liens except taxes, prior recorded realty mortgages and labor liens created by Section 62-209, A.C.A.1939, as aforesaid; that the lien claimed by the Industrial Commission of the State of Arizona is created in Section 56-948, A.C.A.1939; this section of the statutes being later in time and being in apparent conflict with the provisions of Section 62-209, A.C.A.1939, relating to materialmen, furnishing material and merchandise to be used in or upon a mining claim; the Court therefore finds that the provisions of Section 62-209, relating to the priority of liens given to those furnishing merchandise or material to be used in and upon a mining claim, is amended and/or repealed by implication in Section 56-948, A.C.A.1939. The Court therefore finds that the claims of lien of those furnishing merchandise and material to the defendant, Southwestern Mines, Inc., a corporation, to be used in and upon mining claims of said defendant, are inferior to the lien hereby given the Industrial Commission of the State of Arizona."

*    *    *    *    *    *

"7. That the Industrial Commission of the state of Arizona, have judgment against the defendant, Southwestern Mines, Inc., in the sum of $2,141.89, which is a lien for unpaid wage insurance premiums and is next in priority to the labor claims numbered 1 to 6 above and subject only to the payment of taxes, which may be due on the property, which is the subject of this lien foreclosure action."

*    *    *    *    *    *

" * * * That miners and laborers who furnished work and labor designed for and used in or upon any mine or mining claim have a lien upon the same, which is preferred to any prior lien or incumbrance or mortgage upon said mine or mining claims as provided for in Section 62-209, A.C.A. 1939."

*    *    *    *    *    *

"6. * * * That the foregoing items in this judgment numbered 1 to 6 inclusive are on an equal footing and prior liens to

all other liens given by this judgment, and shall be paid first out of any monies received from the sale of the property, which is the subject of this lien for foreclosure action."

The court's findings and judgment are predicated upon its interpretation of sections 56-948 and 62-209, A.C.A.1939, the pertinent portions of which we herewith set out verbatim:

"56-948. *Lien for payments created—Priority and foreclosure thereof—Action for payments due commission.*—If an employer default in any payment required to be made by him to the state compensation fund, or the accident benefit fund, the amount due, with interest thereon at twelve (12) per cent per annum, shall be collected by civil action against him in the name of the commission as plaintiff and the same when so collected shall be paid into the state compensation fund, or accident benefit fund. Separate and apart from and in addition to the other provisions of this article, the claims of the state compensation fund for payments and penalties due under this act shall be a lien prior to all other liens except taxes, prior recorded realty mortgages and unpaid wage claims, not only against the interests of any employer, but against the interests of all others, in the real estate, plant, works, equipment and buildings improved, operated or constructed by any employer, and also upon any products or articles manufactured by such employer."

"62-209. *Lien on mines and mining claims.*—Miners, laborers and persons who furnish materials or merchandise of any kind, designed for or used in or upon any mine, or mining claim, and to whom any sum is due for such labor, material or merchandise, shall have a lien upon the same for such sums as are unpaid. Such lien shall attach whenever the labor was performed, or material or merchandise furnished: Under or by virtue of a contract between the person performing such labor, or furnishing said material or merchandise, and the owner of said mining claim, or his contractors; or under or by virtue of a contract between the person performing such labor, or furnishing said material or merchandise, and the lessee of said mine or mining claim, or his contractor, where the lease from the owner to the lessee permits the lessee to develop or work said mine or mining claim; or under or by virtue of a contract between persons performing said labor, or furnishing said material or merchandise, and any person having an option to buy, or contract to purchase said mine or mining claim, from the owner thereof, where the option or contract permits the person to go upon the mine or mining claim, and to work or develop the same. The lien shall attach to the mine or mining claim in or on which, said labor was performed, or material or merchandise furnished, in preference to any prior lien or encumbrance, or mortgage upon said mine or mining claim."

As the findings of the court above indicate, the trial court held that section

56-948 being enacted long after 62-209, and being in conflict therewith, by implication repealed or amended section 62-209. Counsel have therefore devoted a great deal of their briefs to this subject. We are of the view that the question of repeal or amendment by implication of a former statute by a later one is not an issue in this case. It is true if we treat the two statutes as standing on an equal footing, they so violently conflict with each other that they cannot be harmonized. In view of the decision we have reached it will contribute nothing to this opinion to point out the pitfalls encountered in attempting to determine the effect the latter law has upon the earlier statute if we treat them as being of equal dignity. When so considered and construed together they are unintelligible.

We believe it was not the intention of the legislature in enacting 56-948 to affect in any particular the provisions of section 62-209 for the reason the latter section is a referred measure passed by the people at the general election November 5, 1912. It was approved by a majority of the votes cast thereon and was, on December 5, 1912 proclaimed by the Governor to be the law.

Pursuant to an act of the legislature the laws of the state of Arizona were compiled, revised and codified by the First Legislature at its Third Special Session 1913, and the chapter relating to liens including section 62-209 was enacted as House Bill No. 8 and approved by the Governor on May 17, 1913. Section 62-209 was the only referred measure included in House Bill No. 8.

The Code Commissioner was enjoined under the law to compile, revise and codify all existing laws. It was therefore his mandatory duty to include referendum and initiative measures in the compilation as well as acts passed by the legislature.

To accomplish the end desired the legislature deemed it essential to re-enact the existing laws as compiled and revised in order that their validity might not thereafter be questioned. This was done by segregating laws relating to the same subject matter and enacting them chapter by chapter.

At the time of the compilation, revision and codification of the 1913 Code the legislature had the power to repeal or amend either an initiative or referendum measure but at the general election November 3, 1914, Section 1(6), part 1, article 4 of the Arizona Constitution was amended divesting the legislature of power to either amend or repeal initiative or referendum measures. As amended it reads as follows: "(6) (Veto.) The veto power of the governor, or the power of the legislature, to repeal or amend shall not extend to initiative or referendum measures approved by a majority vote of the qualified electors."

Section 62-209 was not repealed or amended prior to the adoption of the above Constitutional amendment. It was incorporated in the 1913 Arizona Code verbatim

except for a slight revision made by the Code Commissioner substituting the words "Prior to December 5, 1912" for the words "Prior to the passage of this Act." December 5, 1912 was the date the Governor proclaimed it to be a law. The Commissioner also omitted the clause in the original act which repealed all acts and parts of acts in conflict therewith and the clause declaring it to be in force 90 days after its passage by the legislature. The latter clause was rendered nugatory by the referendum itself.

It is obvious that this did not constitute an amendment but was purely a revision made by the Code Commissioner for the sake of brevity without in any wise changing the meaning of the law.

Although section 62-209 as it appeared in the 1913 Revised Code of Arizona and as it now appears in the statutes of this State, had its inception with its passage by the legislature of 1912, the invoking of a referendum against it rendered it wholly inoperative as a law. It was therefore at the polls on November 5, 1912, by a majority of the votes cast thereon by the people of the state that it was given life and vitality. Its incorporation in the 1913 Revised Code of Arizona did not have the effect of depriving it of its character as a referendum measure. Had it been amended prior to or at the time of its incorporation in the Revised Code of that year or prior to the adoption of the constitutional amendment December 14, 1914 it would no longer have been an act passed by the people at the polls. By its amendment the intent of the legislature would have been substituted for the intent of the people and it would have fallen within the rule laid down in Willard v. Hubbs, 30 Ariz. 417, 248 P. 32, 33, and would have derived its authority from the act of the legislature rather than from the people. In that case this court had before it a law regulating the licensing and hunting of game birds and animals, passed by the First Legislature of Arizona in 1912, referred to the people by petition, and passed by a majority of the votes cast at the November 5th election of 1912 and proclaimed by the Governor to be a law on December 5, 1912. That statute was amended in many particulars by the Third Special Session of the First Legislature of 1913 by omitting certain sections, by amending others and by adding new sections, thereby making it an entirely new and different law than that which was passed by the people at the general election. The court said in that case: "* * * The act of 1912 derived its authority from the vote of the people on November 5th of that year, and, had such act remained in force until December 8, 1914 (the court evidently meant Dec. 14, 1941, the date the Constitutional amendment above quoted became effective) there is no question it could not have been changed by the Legislature. * * *" It was held in that case, however, that the law as there amended derived its authority from the act of

·the legislature and from such act only. We concur with that view.

■ A reenactment of a referendum or initiative measure by the legislature constitutes neither an amendment nor a re-·peal. It therefore does not have the effect of depriving such referendum or initiative measure of its character as such. To otherwise hold would have the effect ·of divesting initiative and referendum measures of their constitutional immunity from amendment by the legislature. It would follow that any future revision and codification of the Arizona Code would result in placing initiative and referendum ·measures previously passed on the same footing as legislative enactments and subject to amendment by the legislature.

■ We hold that section 62-209 not ·having been amended or repealed by the legislature prior to the adoption of the Constitutional amendment of December 14, 1914, retains its character as a referendum measure and as such may not be amended by an act of the legislature and therefore section 56-948 neither repeals nor amends it.

■ We further hold that the liens for labor, and material and merchandise fur-·nished for use in or upon mines or mining ·claims created under the provisions of section 62,209 stand upon the same footing and are superior to the lien of the Industrial Commission created under the provisions of section 56-948.

The judgment is reversed with instructions to enter judgment in favor of plaintiffs in accordance with the foregoing decision.

LA PRADE, C. J., and UDALL, STANFORD and DE CONCINI, JJ., concur.