247 P.2d 617

ADAMS et al. v. BOLIN, Secretary of State.
No. 5680.

Supreme Court of Arizona.
July 16, 1952.

John Pintek, Bisbee, Conner & Jones, Tucson, Gerald Jones, Tucson, of counsel, for appellants.

Fred O. Wilson, Atty. Gen., Earl Anderson and Perry M. Ling, Asst. Attys. Gen., Lewis, Roca & Scoville, Phoenix, of counsel, for appellee.

LA PRADE, Justice.

This proceeding presents an appeal from the judgment of the Superior Court dismissing the complaint of plaintiffs. The complaint is for an injunction to prohibit the Secretary of State from certifying to the clerks of the several boards of supervisors, for inclusion on the official ballot to be submitted to the voters at the general election to be held in November, 1952, a referendum proposed by the Legislature. The action by the Secretary of State is sought to be enjoined on the ground that the Legislature was without power to refer the measure in question.

On March 10, 1952, there was filed in the office of the Secretary of State, House Concurrent Resolution No. 4, enacted by the 20th Legislature at its second regular session. This resolution enacted and ordered the submission to the people of a measure repealing an initiative measure adopted by the people in 1948, known as the Public Employees' Retirement Act. Secs. 12–801 to 12–828, inc., A.C.A.1939, Cum. Supp. The measure repealing the act was to "become valid when approved by a majority of the qualified electors voting thereon and upon proclamation of the Governor."

The Public Employees' Retirement Act was initiated by petition and was adopted at the 1948 general election: 240,998 electors had qualified for this election by registering; at the election 184,323 ballots were cast; 86,989 electors voted for the retirement measure and 38,111 voted against it. Of the electors actually voting at the polls 59,223 did not vote on this measure; and, 56,675 registered electors failed to vote at all. All figures re registrations and votes cast were verified from records in the office of Secretary of State, of which we take judicial notice.

"A majority of the votes cast thereon" was 62,551 votes, and became a law upon proclamation of the Governor. Const. Art. 4, pt. 1, sec. 1(5).

"A majority vote of the qualified electors" was 120,500. Const. Art. 4, pt. 1, sec. 1(6).

It did not, however, receive the approval of "a majority vote of the qualified electors" so as to make it immune from repeal or amendment by the Legislature, within the prohibition of Subsection (6), unless the phrase "approved by a majority vote of the qualified electors" is interpreted to be synonymous with the phrase "approved by a majority of the votes cast thereon".

The motion to dismiss the complaint was upon the ground that it failed to state a claim upon which relief could be granted.

It was argued (1) that the court was without jurisdiction to restrain the submission of the referendum proposed by the Legislature, and (2) that the Legislature has constitutional authority to submit to the voters a referendum repealing an initiated law. The judgment ordered the complaint "dismissed for the reason and upon the ground that the Legislature of the State of Arizona does have the right to submit to the voters a referendum to repeal an initiative law, as a legislative measure."

It is the contention of appellants that an initiated measure, once adopted, can only be repealed in the same manner in which it was adopted, i. e., by an initiated repeal, and that the Legislature does not have the constitutional authority to order a referendum repealing an initiated law.

It is appellee's contention that not having received a majority vote of the qualified electors it is subject to repeal or amendment by the Legislature, and if subject to repeal by the Legislature, a fortiori the Legislature must have the power to refer a resolution of repeal. A holding sustaining this first contention would, of course, dispose of appellant's contentions and they would not need to be considered. It is argued that if the constitution makers had intended all initiated and referred measures were to be immune from appeal or amendment by the Legislature, the provisions of subsection (6) would have omitted the words "approved by a majority vote of the qualified electors." The subsection would then have read:

"The veto power of the governor, or the power of the legislature, to repeal or amend shall not extend to initiative or referendum measures".

Appellee presents three propositions of law of which we will take cognizance: they are, (1) the Legislature has constitutional power to repeal or amend an initiated measure approved by less than a majority of the qualified electors; (2) the Legislature has constitutional power to submit to the electorate a referendum repealing an initiated law; (3) that unless specifically authorized by law an injunction will not lie to restrain the exercise of legislative functions or in any manner to interfere in the legislative process.

A part of the controversy here stems from a difference of interpretation of the language of Art. 4, pt. 1, sec. 1(6) of the Constitution. This section reads as follows:

"The veto power of the governor, or the power of the legislature, to repeal or amend shall not extend to initiative or referendum measures approved by a majority vote of the qualified electors."

This section as it now reads was amended by an initiated act approved at the general election on November 3, 1914, and effective December 14, 1914.

The original section read as follows:

" '(6) The veto power of the governor shall not extend to initiative or ref-

erendum measures approved by a majority of the qualified electors.'"

It is thus seen that as originally adopted the governor alone was precluded from vetoing initiative or referendum measures approved by a majority of the qualified electors. By the amendment the Legislature was included in the prohibition and it was deprived of the power to repeal or amend initiative or referendum measures "approved by a majority vote of the qualified electors." Both before and after the amendment the prohibition extended to initiative and referendum measures "approved by a majority vote of the qualified electors."

It is also suggested that if the words "approved by a majority vote of the qualified electors" were not to mean what they say but were intended to mean "approved by majority of the qualified electors voting thereon", that the words "voting thereon" could easily have been added to the sentence, as was done in Art. 21, sec. 1 of the Constitution wherein it is provided that amendments to the Constitution shall become a part thereof "if a majority of the qualified electors *voting thereon* shall approve and ratify * * *." (Emp. Sup.) We believe there is merit in this contention.

On examination of the journal of proceedings of the constitutional convention, wherein the provisions of Art. 4, pt. 1 of the Constitution, relating to initiative and referendum were under discussion, we find that it was repeatedly stated that the Oregon constitution furnished the model for consideration. The sentence in the Oregon section comparable to our Subsection (6) reads: "The veto power of the governor shall not extend to measures referred to the people." Art. 4, § 1. Our Subsection (6) extended the prohibition not only to referred measures but to initiative measures. But it is to be noted that the prohibition in the Oregon section was to "[referendum] measures referred to the people" and then provided that "any measure referred to the people shall take effect and become the law when it is approved by a majority of the votes cast thereon, and not otherwise." It is thus seen that our constitution makers intentionally deviated from the Oregon model and provided that the veto power of the Governor and the Legislature should not extend to initiative or referendum measures *approved by a majority vote of the qualified electors.* It is most patent that the words "approved by a majority vote of the qualified electors" were intentionally and meticulously selected.

Nothing is more firmly settled than under ordinary circumstances, where there is involved no ambiguity or absurdity, a statutory or constitutional provision requires no interpretation. Automatic Registering Mach. Co. v. Pima County, 36 Ariz. 367, 285 P. 1034; Board of Supervisors of Maricopa County v. Pratt, 47 Ariz. 536, 57 P.2d 1220; Industrial Comm. v. Price, 37 Ariz. 245, 292 P. 1099; Palmcroft Development Co. v. City of Phoenix, 46 Ariz. 200, 49 P.2d 626, 103 A.L.R. 802,

modified 46 Ariz. 400, 51 P.2d 921, 103 A.L.R. 811. We are not aware of any absurdity or inconsistency that will arise by construing this constitutional provision to mean what it says.

In Automatic Registering Mach. Co. v. Pima County, supra, [36 Ariz. 367, 285 P. 1035] it is said:

"In determining the true meaning of a statute the great fundamental rule is to ascertain and give effect to the intention of the Legislature. (Citing cases) This intent is, of course, determined primarily from the language of the statute itself, and, when that is plain and unambiguous and conveys a clear and definite meaning there is no occasion for resorting to the rules of statutory construction. The statute must be given its plain and obvious meaning. (Citing cases) But where a literal interpretation would lead to injustice, absurdity or contradictions, or where the language is of doubtful meaning, it is the primary duty of the court to ascertain the legislative intent, and for this purpose to apply the various rules of statutory construction. (Citing cases.)"

There is a marked distinction between a law approved by a majority of the qualified electors and a law approved by a majority of the electors voting thereon. It is a matter of common knowledge, as disclosed by the records in the office of the Secretary of State, that even in presidential election years it is the rare exception when more than 75% of the qualified electors actually vote. It is all too clear that the constitution makers knew the difference between a majority of the votes cast thereon and a majority of the vote of the qualified electors. This is made clearer by reference to Art. 4, pt. 1, sec. 1(2), Constitution, where it was provided that "ten per centum of the qualified electors shall have the right to propose any measure * * *." In Subsection (3) it is provided that "five per centum of the qualified electors" might order a referendum. These two subsections taken together indicate that the required per centum in one instance is ten per centum of the qualified electors and in the other five per centum of the qualified electors. However, these required percentages are modified or reduced by Section 1(7) of Art. 4, pt. 1. This section provides that "The whole number of votes cast for all candidates for governor at the general election last preceding the filing of any initiative or referendum petition on a state or county measure shall be the basis on which the number of qualified electors required to sign such petition shall be computed."

So, Subsection (2) and (3) referring to the percentages required of the qualified electors, do not have to be literally complied with because of Subsection (7), which modifies Subsections 2 and 3 and makes definitely clear that for an initiative measure ten per centum of the qualified electors is not required but rather only ten per

centum of the votes cast for all the candidates for governor at the general election last preceding.

It is urged by appellants that the cases of Willard v. Hubbs, 30 Ariz. 417, 248 P. 32; McBride v. Kerby, 32 Ariz. 515, 260 P. 435; State ex rel. Conway v. Superior Court, 60 Ariz. 69, 131 P.2d 983; State v. Pelosi, 68 Ariz. 51, 61, 199 P.2d 125, 131; Ward v. Industrial Commission, 70 Ariz. 271, 219 P.2d 765, are controlling in their statements that an initiative measure may not be amended or repealed by the Legislature.

None of these cases presented the direct question as to whether there is a *vital* distinction between an initiated or referred measure not enacted or approved by a majority vote of the qualified electors and measures enacted or approved merely by a majority of the votes cast thereon. The instant case for the first time asserts that there is such distinction and makes an issue of it. The statements in these cases, to the effect that initiated laws and referred laws may not be amended or repealed by the Legislature, are overruled to the extent that the statements made directly state or by implication infer that initiated or referred laws not enacted or approved by a majority vote of the qualified electors may not be amended or repealed by the Legislature.

The Willard v. Hubbs case presented this situation: the Legislature amended a section of the penal code and the contention was that the Legislature was without authority to amend the particular code section on the ground that it was an initiated measure. It was determined that it was an initiated measure but had been enacted before the amendment of Art. 4, pt. 1, sec. 1(6), and was, therefore, that type of initiated measure that could be amended or repealed by the Legislature. It was just as if the section had been enacted by the Legislature. It was, therefore, not necessary for the court to make this statement: "It is, of course, true that after such adoption (referring to the constitutional amendment to Art. 4, pt. 1, sec. 1(6)) no measure approved by a referendum could be repealed or amended by the Legislature". [30 Ariz. 417, 248 P. 33.] Apparently this statement was the genesis for the thought or concept that all initiative or referred measures enacted or approved are immune from legislative amendment or repeal, and the thought has been repeated since, but we submit that its author never had presented to him the direct question that is presented in the instant case.

We have pointed out that the words "approved by a majority vote of the qualified electors" are plain and leave no room for construction. But if rules of construction should be availed of, one of the many rules pertaining to constitutional provisions is that some meaning must be given to each phrase of the Constitution unless in giving the words their grammatical and common meaning will create some

impossibility or unworkable situation, or lead to an absurdity. Porter v. Hall, 34 Ariz. 308, 271 P. 411; State ex rel. Davis v. Osborne, 14 Ariz. 185, 125 P. 884; Gherna v. State, 16 Ariz. 344, 146 P. 494; Ann.Cas.1916D, 94; Perkins v. Hughes, 53 Ariz. 523, 91 P.2d 261. In the interpretation of a statute, city ordinance or city charter the cardinal principle is to give full effect to the intent of the lawmaker, and each word, phrase, clause and sentence must be given meaning so that no part will be void, inert, redundant or trivial. City of Phoenix v. Yates, 69 Ariz. 68, 208 P. 2d 1147.

Some assistance can be had in this case by reference to our holding in Maxwell v. Fleming, 64 Ariz. 125, 166 P.2d 831, wherein it was held that the phrase "majority of all votes cast at such election" in the Phoenix City Charter means exactly what it says—a majority of the total vote cast at the election, as opposed to a majority of the votes cast for one of the offices voted upon. By analogy, there can be no question that the phrase "majority of the votes cast thereon" appearing in Constitution of Arizona, Art. 4, pt. 1, sec. 1(5) means exactly what it says—a majority of the votes cast upon the initiative or referendum measure, as opposed to a majority of the votes cast at the election.

■ Again we have held that strict rules of technical grammar will not be resorted to to defeat the plain purpose of the statute. Mahoney v. Maricopa County, 49 Ariz. 479, 68 P.2d 694. What was the plain purpose for which this limitation was put upon the power of the Legislature to amend or repeal initiative or referred measures? Was it to extend to all initiative or referred measures enacted and approved? The constitutional provision suggests that the answer is no. If attention is given to the constitutional provision the limitation on the legislature runs only to those measures that are approved by a majority vote of the qualified electors. If this latter phrase, "approved by a majority vote of the qualified electors", is not susceptible of more than one meaning, then this court must enforce it according to its terms. Millett v. Frohmiller, 66 Ariz. 339, 188 P.2d 457.

To interpret and enforce this constitutional provision according to its terms will not create an impossible or unworkable situation, nor will it result in an absurdity. To enforce it according to its terms will mean that only those initiated and referred measures which receive the majority vote of the qualified electors will be immune from legislative amendment or repeal. We are fully aware of the stated reasons actuating the constitution makers to reserve to the people the right to enact laws and refer measures enacted by the Legislature. We are also cognizant of the mischief it was felt the reservation of these powers would reach and the objects and remedy that was contemplated. But with the advent of the initiative and referendum there was no general concept that initiated

and referred measures were sacrosanct. At the time of the adoption of our constitutional provisions and the amendment of Section 1(6), it was felt that Oregon had best conceived and expressed the ideas inherent in the reservations. But Oregon only withheld the veto power from the governor alone, and his veto power extended only to referred measures. In California the veto power was withheld from the governor on measures initiated or adopted by the people and the Legislature was precluded from amending or repealing any act, law or amendment to the Constitution adopted by the people at the polls under the initiative provisions. Calif.Const., Article 4, section 1.

According to the journal of the proceedings before the convention, this California provision was before our constitution makers and it would appear that the California provision furnished the idea for the Arizona constitution makers to enlarge the prohibition to include the Legislature as to initiative and referred acts. But in this respect the California constitution was exact and concise in withholding the veto power of the Legislature to measures initiated or "adopted by the people at the polls". Id.

The Washington constitutional provision was also before our constitution makers. The comparable provision from the Constitution of the state of Washington reads as follows: "No act, law, or bill approved by a majority of the electors *voting thereon* shall be amended or repealed by the legislature within a period of two years following such enactment." (Emp. Sup.) Wash.Const. Subdiv. (c) of Seventh Amendment. It would appear from the reported cases many constitutions and municipal charters contain express inhibitions, absolutely or for a specified time against repeal, abrogation or amendment by the Legislature or municipal councils, of initiative or referendum measures. The examination of these constitutional provisions and the reported cases referring to constitutional and charter prohibitions plainly depict that there was no universal or general concept of the inviolability of initiated or referred measures. Reference in each instance must be had to the particular constitutional or charter provision. We have been referred to no case, and our own industry has furnished none, in which the exact language under consideration has been considered. In this respect we are on our own in attempting to construe the words "approved by a majority vote of the qualified electors." Regardless of the fact that they are simple and explicit we have nevertheless tried to make a thorough examination of them, taking into consideration the sections in pari materia, the circumstances under which they were adopted, the purposes to be accomplished by their use, and the evils to which they were addressed. All this search and contemplation leads us to the conclusion that the words mean simply what they say.

The Wyoming case of State ex rel. Blair v. Brooks, 17 Wyo. 344, 99 P. 874, 22 L.R.A.,

N.S., 478, furnishes some excellent reasoning which by way of analogy fortifies the conclusion that we have reached in this case. In this Wyoming case the voters, by a vote of 12 to 1, approved a constitutional amendment. The Constitution, art. 20, § 1, required that ratification had to be by "majority of the electors". At the election 37,561 votes were cast. Of these, 12,160 voted in favor of the adoption of the amendment and 1363 voted against it. The question was, did it receive the approval of "a majority of the electors"? The court said no. In an explanation thereof and in expounding its reason for its conclusion, it said:

"The provision of the Constitution is explicit in its terms. Such proposed amendment can only be ratified by a majority of the electors. It would be anomalous to say, in view of the section taken as a whole, that it was intended to mean only those who actually voted upon the amendment, or in other words, a majority of some of the electors, excluding others. It requires the proposed amendment to be submitted to the electors of the state, those who are entitled to vote, and it is by a majority of the electors—that is, electors of the state—and not a majority of those actually voting upon the question, that such a proposed amendment is ratified. Any other construction would authorize the counting of all who did not vote on the question as in favor of the adoption, a construction which

is not borne out by the language, nor is it in harmony with the spirit of the Constitution. While it is true that a majority or a plurality of the votes cast elects a candidate for an office, yet when a voter fails to cast his vote for any candidate for a particular office, the preference of the elector has not been legally expressed, and there is nothing to record in favor of or against any such candidate. The word 'elector' is defined in the Constitution (section 2, art. 6) as follows: (definition omitted). There is no room for doubt as to what the constitutional convention meant when it used the word 'electors' in section 1, art. 20. The word, according to the definition given it by those who framed the Constitution, means those who are entitled to vote; and, when the Constitution says a majority of the electors, it means, in the absence of any qualifying phrase, a majority of those who are entitled to vote. This is made more evident from the fact that the phrase 'if ratified by a majority of the electors' follows the provision that the proposed amendment shall be submitted to the electors of the state; and the words 'the electors,' without other qualification, a majority of whom is required to ratify the amendment, clearly means the electors of the state. The language is broader in meaning than a mere majority of the electors who actually vote upon the proposition. Neither residence of the elector nor

failure to vote can militate against this proposition. The word 'elector' is generic. It includes, not only those who vote, but those who are qualified, yet fail to exercise the right of franchise. To hold otherwise would, in effect, give to the word 'electors' a narrower and more restricted meaning than that given to it in the Constitution."

Other cases to the same effect are: People ex rel. Davenport v. Brown, 11 Ill. 478; State ex rel. Dobbins v. Sutterfield, 54 Mo. 391; People ex rel. Hetfield v. Trustees of Village of Ft. Edward, 70 N.Y. 28; Clayton v. Hill City, 111 Kan. 595, 207 P. 770.

Counsel for appellants suggest that to make a distinction between initiative and referendum measures approved by a majority of the qualified electors and those approved by a majority vote of the votes cast thereon would throw out of harmony the various provisions of our Constitution on the subject of initiated and referred laws and would create a seriously confused condition that would take years of litigation to straighten out. If we thought that this dire consequence were in store we would most earnestly seek a way, if possible, to adopt appellants' interpretation. We are of the opinion that to permit the legislature to make needed amendments to ill-considered initiated laws or referred measures that, through the passage of time, have become obsolete, will be a step forward and relieve the people of shackling legislation. Although it is true that many worthwhile general ideas are incorporated in initiative measures, it is also true that they do not have the advantage of open debate and analysis, and oftentimes incorporate provisions that are out of harmony with and contradict the general scheme of legislation. If the people think that any legislative repeal or amendment of initiated law is not desirable, five per centum of the qualified electors can force a referendum against it and the people will again have an opportunity to express their opinion thereon.

There are on the books a total of sixteen initiated measures, one of which became a law by 13,941 votes, another by 16,754 votes and another by 18,936 votes. We now have fourteen laws that were referred by petition, two of them receiving less than 11,-000 votes, two more receiving less than 12,000 votes, four of them receiving less than 14,000 votes and two of them receiving less than 15,000 votes; three were referred by the Legislature. The total number of votes cast for all the candidates for governor in the 1950 general election was 195,227. In order to initiate a repeal or amendment to any of these 33 initiated and referred laws would require an initiative petition, to bear valid signatures of 19,-523 qualified electors. In order to propose an amendment or repeal of an initiated or referred law at the present time, for the most part, requires one and one-half times as many signatures as the measure received when it was enacted or approved, a most

expensive and laborious undertaking; so much so, in fact, that many of them die a-borning. To give to the Legislature the outright power to amend or repeal, both subject to the referendum, can only result in good; not "good" that we, as members of the court view it, but the opportunity for "good" as envisioned and authorized by the Constitution.

Appellee's Proposition No. 2

"The Legislature has constitutional power to submit to the electorate a referendum repealing an initiated law."

The constitutional provisions applicable to this provision are all found in Art. 4, pt. 1, sec. 1, of the Constitution. They are:

"(1) The legislative authority of the state shall be vested in a legislature, consisting of a senate and a house of representatives, but the people reserve the power to propose laws and amendments to the constitution and to enact or reject such laws and amendments at the polls, independently of the legislature; and they also reserve, for use at their own option, the power to approve or reject at the polls any act, or item, section, or part of any act, of the legislature."

"(2) The first of these reserved powers is the Initiative. Under this power ten per centum of the qualified electors shall have the right to propose any measure, and fifteen per centum shall have the right to propose any amendment to the constitution."

"(3) The second of these reserved powers is the Referendum. Under this power the legislature, *or five per centum of the qualified electors,* may order the submission to the people at the polls of any measure, or item, section, or part of any measure, enacted by the legislature, except laws immediately necessary for the preservation of the public peace, health, or safety, or for the support and maintenance of the departments of the state government and state institutions * * *." (Emp. Sup.)

"(5) Any measure or amendment to the constitution proposed under the initiative, and any measure to which the referendum is applied, shall be referred to a vote of the qualified electors, and shall become *law when approved by a majority of the votes cast thereon* and upon proclamation of the governor, and not otherwise." (Emp. Sup.)

"(6) The veto power of the governor, or the power of the legislature, to repeal or amend shall not extend to initiative or referendum measures approved by a majority vote of the qualified electors."

"(14) This section shall not be construed to deprive the legislature of the right to enact any measure."

The most important of the foregoing clauses is, of course, the first. It is often said that all power resides in the people

and that the power of a state legislature is a delegated power. In the sense that governments derive their just powers from the consent of the governed, such observation is of course true. But it does not follow that the delegated legislative power is circumscribed or restricted otherwise than by constitutional prohibition, nor that the power delegated to a state legislature is a power to legislate only within a restricted, circumscribed, described or narrow field.

■ Initially the people have all legislative power. By subsection (1) they delegated not *some* or *part* of their legislative power, but *all* legislative power, McBride v. Kerby, supra, reserving only to the electors concurrent right to propose laws and amendments and to approve or reject legislative enactments. The language of the section is clear, complete and concise.

By these statements we do not suggest that the legislative authority is wholly untrammeled and unrestricted. Except as legislation may be prohibited by or repugnant to other provisions of the Constitution or the Federal Constitution and laws, the authority of the Legislature is absolute, and the delegation by the people was a complete and absolute delegation, with a reservation, not of part of such authority, but of a concurrent right of proposal and (by referendum) a right of veto.

The power of state legislatures should not be confused with and is in fact precisely opposite to the delegated power of Congress.

The Arizona Constitution says: "The legislative authority of the state shall be vested in a legislature". The Federal Constitution says: "All legislative Powers *herein granted* shall be vested in a Congress * * *." U.S.Const. Art. 1, Sec. 1. The former is (except as limited by other constitutional provisions) a vesting of *all* power. The latter is nothing more than a statement of the manner of exercising such limited power as is granted.

Perhaps what we have said here, not being new, should need no restatement or iteration. More recently, in considering the constitutionality of a statute authorizing the reimbursement of personal expenses of members of the Legislature, this court, in Earhart v. Frohmiller, 65 Ariz. 221, 224–225, 178 P.2d 436, 437–438, considered the whole question in extenso and in part said:

"Some of the courts which held such acts invalid have done so because the state constitutions in question provided no *express authorization* for such legislation.

"We believe the rule of construction which requires the finding of express authorization is inappropriate when applied to the Constitution of the State of Arizona, and by the great weight of authority throughout the United States, it is not applicable to the construction of state constitutions generally. Art. 2, Sec. 33 of the Arizona Constitution states that 'The enumeration in this

constitution of certain rights shall not be construed to deny others retained by the people'. Unlike the Federal Constitution, state constitutions are not grants of power, but instead are limitations thereof. The generally accepted doctrine is that except for those things necessarily inhibited by the Federal or state constitution, the state legislature may pass any act, because the whole power not prohibited by the state and Federal constitutions is retained in the people and their elected representatives in the state. (Citing cases)

*   *   *   *   *   *

"Our standard for judgment here is clear. We must find that the Act is clearly prohibited by either the Federal Constitution or the Constitution of Arizona in order to hold it invalid. And in looking to see whether it is clearly prohibited we are cognizant of the rule that all presumptions and intendments are in favor of the validity and constitutionality of legislative acts and such acts 'will be given a construction consistent with validity if at all possible.' "

The clear intent and meaning of subsection (1) "The legislative authority of the state shall be vested", is fortified and made unmistakably clear by subsection (14); "This section shall not be construed to deprive the legislature of the right to enact any measure."

The comparable section of Oregon Constitution reads:

"This section shall not be construed to deprive any member of the legislative assembly of the right to introduce any measure."

An understanding that our 15 subsections were incorporated as one paragraph in the Oregon Constitution makes it clear that the word "section" refers to all of our 15 subsections.

Mr. Justice Lockwood suggested one meaning: that notwithstanding the pendency of a referendum petition (not yet voted upon) as to a particular measure, the Legislature could not be deprived of the power by new enactment to legislate on the same subject. McBride v. Kerby, supra. We suggest two additional meanings: first, the section should be construed with subsection (1) and constitutes, out of an abundance of caution, a reiteration of the principle there expressed, that while the people have reserved the right of initiative and referendum, such reservation shall not be construed so as to deprive the Legislature of its plenary power, which is *all* legislative power; and second, the section should be construed with subsections (3), which gives the Legislature the concurrent right to refer and (6), which denies to the Legislature the power to amend or repeal an initiated or referred act approved by a majority vote of the qualified electors.

Fundamentally, the primary contention made by appellants is that subsection (6), prohibiting the Legislature from itself amending or repealing an initiated or re-

ferred act approved by a majority vote of the qualified electors should be interpreted to mean that the Legislature may not set in motion by referendum resolution the machinery by which the people can amend or repeal such initiated or referred act.

■ One of the simplest answers to the contention is that the section does not in words so restrict the Legislature and that if such restriction had been thought desirable by the framers of the Constitution, its inclusion therein would have been simple of accomplishment. The more complete answer is, of course, that the Legislature has all power not expressly prohibited or granted to another branch of the government.

A number of states other than Arizona have constitutional provisions which prohibit a legislature from amending or repealing an initiated or referred law, either permanently or for a term of years. Similar provisions are not infrequently found in city charters, or imposed upon cities by constitutional or statutory mandate. An examination of the reported decisions from those states which have, as to their legislatures or their cities, adopted such restrictions, reveals that the right of the legislature (or the city council) to submit a referendum for the repeal of an initiated or referred act has never been questioned, but has been assumed to exist. State ex rel. Gabbert v. MacQueen, 82 W.Va. 44, 95 S.E. 666, 667; State ex rel. Wagner v. Summers, 33 S.D. 40, 144 N.W. 730, 50 L.R.A.,N.S., 206; State ex rel. Harley v. City of Wichita, 151 Kan. 390, 99 P.2d 812, 816; Stetson v. City of Seattle, 74 Wash. 606, 134 P. 494, 496; State ex rel. Knez v. City of Seattle, 176 Wash. 283, 28 P.2d 1020, 33 P.2d 905; State ex rel. Pike v. City of Bellingham, 183 Wash. 439, 48 P.2d 602.

The Legislature of Arizona has not only assumed that it had the authority to repeal an initiated measure and refer the act of repeal to the people but it has actually executed such assumption.

In 1916, by an initiated measure, the people adopted an act "relating to the preservation of fish and game and amending Paragraphs 654 and 670, Title XVIII, Penal Code of the Revised Statutes of Arizona, 1913." Laws of 1917, In. and Ref. Measures, page 5. This act related to the seasons and bag limits for taking of game birds, game animals and fish, and fixed the license fees therefor. Following the adoption of the initiated measure relating to fish and game, there was much agitation and discussion among the people as to the wisdom of the law and its then usefulness, in view of changing weather conditions and quantities of game and fish available to be taken. It was argued that the law should be more amenable to conditions then existing, and that the game and fish seasons and bag limits should not be arbitrarily fixed for long periods of time, the seasons to depend upon weather conditions and the bag limits to depend upon quantities of animals and birds which in turn were controlled by weather conditions, natural food supplies,

284

etc. The Legislature then apparently being of the opinion that it was without the power to repeal an initiated measure did consider it had the power to repeal and refer. This is evidenced by the fact that in 1921 the Legislature enacted an act repealing the initiated measure of 1916 and ordered the act of repeal referred to the people. See p. 444, S.L.1923. On referral this act was defeated.

In 1925 the Legislature again passed an act to repeal the initiated act of 1916 relating to fish and game (See Chap. 6, S.L. 1925), and directed it be referred to the people at the general election in 1926. On referral this act was defeated.

In 1927 for the third time the Legislature passed an act repealing and referring the initiated measure of 1916. (See Chap. 75, S.L.1927.) This act was approved at the general election in 1928. Immediately following this election the Legislature enacted an emergency law regulating the issuance of licenses, the taking of game and fish and regulating the seasons and bag limits. (See Chap. 3, Acts of 5th Sp.Sess. of 8th Legis., p. 465, S.L.1928.) Thereafter, in March, 1929, the Legislature by emergency measure, Chap. 84, S.L.1929, enacted a comprehensive law relating to game and fish and creating a game commission, delegating to it the authority to close, shorten or alter the open season or bag limits prescribed by the act. This act has been repeatedly amended. (See Chap. 97, S.L.1931; Chap. 93, S.L. 1933; Chap. 52, S.L.1945.)

It thus appears that from 1928 to date the act of the Legislature in 1927 in referring a repeal of the initiated act of 1916 has not been challenged. The initiated act of 1916 has been superseded and all matters relating to fish and game are now regulated by a comprehensive fish and game code providing for flexibility as circumstances and conditions demand. We have recited this fish and game act and its history to show the legislative concept of its authority, and as an exemplification of the good that flows from the interpretation that we have made of Section 1(6) of Article 4, pt. 1 of the Constitution, which allows the Legislature to amend or repeal any initiative act that has failed to receive a majority vote of the qualified electors, and, as in the instant case, to refer the repeal.

Appellee's Proposition No. 3

Unless specially authorized by law, an injunction will not lie to restrain the exercise of legislative functions nor in any manner to interfere in the legislative process.

The legislative authority of the State of Arizona is vested in the Legislature and the people and may be exercised by both. Const. Art. 4, pt. 1, sec. 1, supra.

A reference by the Legislature to the people is a part of the exercise of the legislative function.

" * * * the legislature, * * * may order the submission to the people at the polls of any measure * * *

enacted by the legislature * * *." Const. Art. 4, pt. 1, sec. 1(3), supra.

Such function is exercised by the passage of the measure by the Legislature in repealing the initiated act and in the same measure ordering its referral, the certification thereof by the Secretary of State to the Clerks of the Boards of Supervisors (required by Section 60–106, A.C.1939), and the vote of the people thereon. The certification by the Secretary of State is manifestly a ministerial act not requiring discretion. It is a mere step in the legislative process by which the Legislature and the people, acting together, exercise the legislative function. "In this state the Legislature and the people constitute the lawmaking power." Allen v. State, 14 Ariz. 458, 467, 130 P. 1114, 1118, 44 L.R.A.,N.S., 468.

In the absence of express statutory power, the courts are without jurisdiction to interfere, whether by injunction or otherwise, with the exercise of the legislative function or with the enactment of legislation. This court has spoken:

"Courts have no power to enjoin legislative functions." City of Phoenix v. Superior Court of Maricopa County, 65 Ariz. 139, 144, 175 P.2d 811, 814.

A clear statement of the rule is found in State v. Osborn, 16 Ariz. 247, 249, 143 P. 117, 118, wherein our court expresses itself as follows in refusing to enjoin the Secretary of State from referring to initiated measure:

"The appellant concedes that the courts are powerless to restrain a member of the Legislature from introducing any measure, valid or invalid, for the reason that the courts cannot interfere with the action of the legislative department. What legal warrant has a court to enjoin the Secretary of State from certifying a measure whether valid or invald? Is not the initiative petition also a step in the process of legislation?"

The theory of the cited cases is of course closely akin to the well established rule that the courts will not consider political matters. Renck v. Superior Court of Maricopa County, 66 Ariz. 320, 187 P.2d 656. And the refusal of the courts to interfere in the exercise of the legislative function is by no means a minority rule but appears to be well-nigh universal. Person v. Doughton, 186 N.C. 723, 120 S.E. 481; People ex rel. Foley v. Begole, 98 Colo. 354, 56 P.2d 931; Clements v. Roberts, 144 Tenn. 129, 230 S.W. 30; Id., State ex rel. Better Built Home & Mtg. Co. v. Davis, 302 Mo. 307, 259 S.W. 80; State ex rel. Abel v. Gates, 190 Mo. 540, 89 S.W. 881, 2 L.R.A.,N.S., 152.

We therefore hold:

1. That the Legislature has constitutional power to repeal or amend an initiated measure approved by less than a majority of the qualified electors;

2. That the Legislature has the constitutional power to refer to the elec-

tors an act repealing an initiated law, and

3. That unless specifically authorized by law an injunction will not lie to restrain the exercise of legislative functions or in any manner to interfere in the legislative process.

The judgment is affirmed.

UDALL, C. J., and PHELPS and DE CONCINI, JJ., concurring.

STANFORD, Justice (dissenting).

The Legislature is empowered, but limited under the referendum provisions of the Constitution, to refer laws enacted by it. Concurrent Resolution No. 4 now refers to a vote of the people, not a law "enacted by the Legislature" but a proposal only to become law when approved by the voters. The Legislature is thus attempting to submit to the voters, as an initiative measure, a proposal to repeal the Employees' Retirement Act.

The Employees' Retirement Act, having been initiated, is not subject to repeal or amendment by the Legislature. The majority opinion, however, is of the opinion that not having been adopted by a majority of the electors as appears on the roll of registered voters, the power still exists in the Legislature to repeal or amend notwithstanding the measure was adopted as an initiative measure. The answer, of course, to that proposition is that Concurrent Reso-

lution No. 4 was neither a "repeal nor amendment".

Not having repealed the Retirement Act by concurrent resolution, the only question therefore before the court is whether the Legislature has been given the power to initiate, and to submit to the voters a measure under the initiative provisions of the Constitution.

While the Legislature has power to enact legislation, not prohibited by the State or Federal constitutions, it is not an inherent legislative power to delegate the law-making power to the people, either by initiative or referendum. People ex rel. Thomson v. Barnett, 344 Ill. 62, 176 N.E. 108, 76 A.L.R. 1044.

The authority to initiate, or refer laws, springs from the Constitution itself, as a power delegated, not as power inherent in the Legislature. Therefore, such power may be exercised only in the manner as delegated. Clements v. Hall, 23 Ariz, 2, 201 P. 87.

The referendum powers give the Legislature, or 5% of the voters, authority to have placed upon the ballot any measure enacted by the Legislature, for approval or veto, while under the Initiative no authority to submit laws proposed by the Legislature is delegated to the Legislature, but is limited to a petition signed by 10% of the qualified electors. The Legislature therefore has no power to initiate a law by concurrent resolution, and Resolution No. 4 under consideration is unauthorized

and is an unconstitutional exercise of the legislative powers.

Art. 4, pt. 1, sec. 1(5), of our Constitution provides that any measure submitted to the qualified electors shall become law when approved by a majority of the votes cast thereon, and section 1(6) of the same Article follows and denies the Governor the right to veto, and the Legislature the right to repeal or amend, any measure approved by a majority *vote* of the qualified electors. The majority opinion reads into the Constitution as though "qualified electors" had the words following "as appears on the registration roll of voters", although and notwithstanding that Art. 4, pt. 1, sec. 1(5) defines the necessary qualified voters to enact the measure as being the majority of votes cast thereon.

No initiated or referred measure since statehood has been adopted by a majority of the qualified electors. To accept the interpretation now given the Initiative and Referendum measures means that the Governor could have vetoed any measure that has ever been adopted, and the Legislature may now repeal or amend any initiated or referred measure enacted since statehood.

When only 50% of the voters exercise their right to vote it will be seen how impossible it becomes to hereafter place beyond the power of the Legislature to immediately repeal any law enacted by the people.

It has been the accepted construction of the language of the Constitution, by all Governors, the Legislature, and the courts, that initiated and referred measures were beyond the power of the Legislature to disturb. The majority opinion has completely nullified the interpretation of that provision of the Constitution prohibiting the Governor from vetoing, or the Legislature from repealing, initiative and referred measures. Hereafter only an amendment of the Constitution itself by the people can restore and preserve the laws enacted through the Initiative and Referendum.